# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

KENNETH GANTT,
                    *Plaintiff-Appellant,*

v.

WILLIAM ALAN WHITAKER, Sheriff of
Davie County, in his official
capacity; WILLIAM LEE WHITESIDES,
in his individual and official
capacities; THE CINCINNATI
INSURANCE COMPANY, as Surety;
COUNTY OF DAVIE,
                    *Defendants-Appellees.*

No. 02-1340

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CA-00-383-1)

Argued: December 5, 2002

Decided: January 23, 2003

Before NIEMEYER, WILLIAMS, and TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Stephen Luke Largess, FERGUSON, STEIN, CHAM-
BERS, WALLAS, ADKINS, GRESHAM & SUMTER, P.A., Char-

lotte, North Carolina, for Appellant. Robert Danny Mason, Jr., WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina, for Appellees. **ON BRIEF:** James R. Morgan, Jr., WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Kenneth T. Gantt initiated this proceeding in the United States District Court for the Middle District of North Carolina under 42 U.S.C.A. § 1983. He contended that Sheriff William Allen Whitaker and Deputy William Lee Whitesides of the Davie County Sheriff's Office (the Sheriff's Office) violated his constitutional rights by causing him to be arrested and prosecuted, without probable cause, on charges of impersonating a law enforcement officer, selling alarms without a license, and obtaining property under false pretenses. He also asserted various related state law claims. The district court entered summary judgment in favor of Whitaker and Whitesides on the basis of qualified immunity, and this appeal followed. For the reasons set forth below, we affirm.

I.

A.

On April 9, 1999, the Sheriff's Office received several calls from citizens reporting that an individual impersonating a law enforcement officer was attempting to sell alarm systems and/or self-defense lessons door-to-door in the Joe Road/Highway 64 East area of Davie County.[1] The impersonator was reportedly a black male driving a

---

[1] In summarizing the facts in this case, we resolve all disputed factual issues in favor of Gantt, the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

black Blazer. In response to these calls, Deputy Brown was dispatched to the vicinity but found no one meeting the description.

That night, a local television station aired a story in which Sergeant Diggs reported that a black male was impersonating an officer and selling alarms and/or self-defense lessons. Shortly thereafter, the Sheriff's Office received two additional calls from local residents, Paul Johnson and Jo Anne Allen, who each reported being visited by a man attempting to sell alarm systems.

Brown was dispatched to talk with Johnson. Johnson informed Brown that a man identifying himself as Gantt and driving a blue minivan had attempted to sell him a wireless alarm system earlier that day. After speaking with Johnson, Brown prepared an incident report indicating that Gantt "possibly represent[ed] [him]self as a law enforcement officer to sell alarm systems." (J.A. at 190-91.)

Diggs was dispatched to respond to Allen's call. Allen and her husband informed Diggs that a black male identifying himself as Gantt had come to their residence, told them he worked with the Sheriff's Office, and offered to sell them an alarm system. According to the Allens, Gantt was carrying a black briefcase-type bag with a gold star emblem on it and was driving a blue minivan. Diggs completed an incident report and, in the space reserved for how the crime was committed, indicated that Gantt stated that he worked for the Sheriff's Office. In the block of the report marked "Crime," Diggs originally wrote "personating an officer," but he later changed this to "suspicious person." (J.A. at 188.)

The next morning, Whitesides reported for duty and attended a shift meeting where the night officers conveyed information to those beginning the morning shift. At this meeting, Whitesides was instructed to be on the lookout for a black male, possibly identifying himself as Gantt, who was suspected of impersonating a law enforcement officer to sell alarm systems and/or self-defense lessons.

Gantt, having seen a rebroadcast of the news report, went to the Mocksville Police Department to determine if he was the person described in the report. The Mocksville Police Department called the Sheriff's Office and told them that a black male identifying himself

as Kenneth Gantt was there and wanted to speak with someone about the report of impersonating a law enforcement officer. Whitesides was dispatched to investigate and, upon arrival, met Gantt. At Whitesides's request, Gantt followed Whitesides back to the Sheriff's Office in his own vehicle.

When Gantt arrived at the Sheriff's Office, he asked to speak with the Sheriff. Whitaker agreed and went to the hallway to speak with Gantt. Gantt expressed his frustration with the news report and asked Whitaker to issue a retraction, noting how harmful the news report would be for his business. Whitaker told Gantt that he would not assist in having the report retracted. Whitaker later stated that he found Gantt to be "belligerent and arrogant" during their conversation. (J.A. at 698.) According to Gantt, Whitaker then met with Whitesides about filing charges against Gantt.

When Whitesides returned, he asked Gantt if he sold alarms and, if so, whether he had a license. Gantt stated that he did sell alarms but that he did not need a license. Whitesides then asked Gantt if he had a briefcase with a gold star emblem on it. Gantt replied that he did and went to his car to retrieve the briefcase for Whiteside's inspection. Whitesides noted that the briefcase had a large, gold Sheriff's Association star emblem on the side. The briefcase contained a demonstration kit for a home alarm system and several receipts, including one signed by the Allens.

At this time, Whitesides went to discuss the situation with Whitaker, who advised Whitesides to telephone the district attorney's office. Whitaker and Whitesides both allege that the telephone call was for the purpose of determining whether Gantt's conduct constituted a crime and whether the district attorney's office would prosecute such a case. Gantt, on the other hand, contends that Whitesides and Whitaker had already decided that they would charge Gantt with a crime and contacted the district attorney's office to familiarize themselves with the statutory provisions governing alarm licensing.

When Whitesides telephoned the district attorney's office, he spoke with Assistant District Attorney Douglas Vreeland, and explained the information he had regarding Gantt. According to Vreeland, the facts relayed by Whitesides matched the requisite elements of the offense

of impersonating an officer. Vreeland also pointed out statutory provisions governing the offenses of selling alarms without a license and obtaining property by false pretenses.

After this conversation, Whitesides conveyed the information relating to the case to a magistrate in Davie County. The magistrate researched the statutes governing the offenses of obtaining property by false pretenses, selling alarms without a license, and impersonating an officer. Concluding that the facts conveyed by Whitesides supported each of the elements of these offenses, the magistrate found probable cause to issue warrants for Gantt's arrest. Whitesides served the warrants on Gantt and arrested him.

Over the next few days, Whitesides conducted further investigation and determined that Gantt had similarly approached other local citizens. On this basis, additional charges were filed against Gantt.

Less than two months later, the district attorney's office dismissed all charges against Gantt except one alarm license violation. After the North Carolina Alarm Licensing Board ruled that Gantt did not need a license and was not surveying people's homes, this remaining charge was voluntarily dismissed.

B.

On April 17, 2000, Gantt filed this action against Whitaker, in his official capacity, Whitesides, in his individual and official capacities, and Cincinnati Insurance Company, as a surety on the Sheriff's surety bond (collectively, Defendants).[2] Gantt alleged a cause of action under 42 U.S.C.A. § 1983 for violations of the Fourth Amendment, including false arrest and malicious prosecution, and various state law claims.

Defendants filed a motion for summary judgment as to all claims, and Gantt filed a motion for partial summary judgment as to his § 1983 Fourth Amendment claims and his state law false arrest and

---

[2]Gantt originally included Davie County as a defendant, but all claims against the County were voluntarily dismissed after Gantt conceded that the County was not a proper party. (J.A. at 930 n.2.)

malicious prosecution claims. Following oral argument, the district court granted Defendants' motion for summary judgment, denied Gantt's motion for partial summary judgment, and declined to exercise jurisdiction over Gantt's state law claims. Gantt timely noted this appeal.

II.

Gantt first argues that the district court erred by concluding that Whitesides is entitled to summary judgment on the basis of qualified immunity. We review de novo the district court's grant of summary judgment. *See Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).

Qualified immunity protects government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The steps in the qualified immunity analysis are sequential: the court "'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all,'" before "'proceed[ing] to determine whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)); *see also Saucier v. Katz*, 533 U.S. 194, 200-01 (2001); *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987); *Milstead v. Kibler*, 243 F.3d 157, 161-62 (4th Cir. 2001).

Applying this framework, we evaluate whether the facts, taken in the light most favorable to Gantt, show that Whitesides's conduct violated any of Gantt's federal rights. In identifying the specific constitutional right allegedly infringed, we first address Gantt's argument that the district court erred by failing to recognize that Gantt had properly alleged at least two distinct constitutional violations: a "false arrest" § 1983 claim and a "malicious prosecution" § 1983 claim.[3] The dis-

---

[3]In a footnote of his appellate brief, Gantt summarily asserts that the district court failed to address his claim that the Fourth Amendment also

trict court stated that "[m]alicious prosecution is a common law cause of action which is not independently redressable under § 1983," and concluded that the claims "really merge into one claim based on a Fourth Amendment violation." (J.A. at 938-39 n.4.)

Section 1983 "is not itself a source of substantive rights, but a method for vindicating *federal* rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979) (emphasis added). Because § 1983 does not provide redress for violations of state law, *White v. Chambliss*, 112 F.3d 731, 738 (4th Cir. 1997), we previously have made clear that "there is no such thing as a "§ 1983 malicious prosecution' claim. What we term[ ] a 'malicious prosecution' claim . . . is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution — specifically, the requirement that the prior proceeding terminate favorably to the plaintiff. It is not an independent cause of action." *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (internal citation and footnote omitted), *cert. denied*, ___ U.S. ___, 121 S.Ct. 889 (2001); *see also Albright v. Oliver*, 510 U.S. 266, 271, 275 (1994) (holding that a claim for unlawful initiation of criminal proceedings could be brought under § 1983, if at all, only under the Fourth Amendment); *Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001) ("Rogers' malicious prosecution claim is so intertwined legally with his false arrest claim as to stand or fall with that claim for qualified immunity purposes. We conclude that this claim is wholly derivative of the false arrest claim for qualified immunity

---

was violated when he was unlawfully seized at the Sheriff's Office prior to his arrest. Because Gantt has failed to comply with the dictates of Federal Rule of Appellate Procedure 28(a)(9)(A) regarding this claim, we consider him to have abandoned it. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999) ("Federal Rule of Appellate Procedure 28(a)(9)(A) requires that the argument section of an appellant's opening brief must contain the appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies. . . . Failure to comply with the specific dictates of this rule with respect to a particular claim triggers abandonment of that claim on appeal." (internal citations and quotation marks omitted)).

purposes and thus do not analyze it separately." (internal citation omitted)). Thus, we agree with the district court that Whitesides' conduct — both in terms of the arrest and the subsequent criminal prosecution — must be evaluated solely by reference to the Fourth Amendment's prohibition against unreasonable seizures.[4]

To establish that his seizure was unreasonable, Gantt must demonstrate that his arrest was without probable cause. *Dunaway v. New York*, 442 U.S 200, 213 (1979) ("Fourth Amendment seizures are 'reasonable' only if based on probable cause."); *Porterfield v. Lott*, 156 F.3d 563, 568-71 (4th Cir. 1998) (holding that a Fourth Amendment claim founded on malicious prosecution must be analyzed to determine whether probable cause for the arrest was lacking). Probable cause is determined from the totality of the circumstances known to the officer at the time of the arrest. *United States v. Garcia*, 848 F.2d 58, 59-60 (4th Cir. 1988). For probable cause to exist, there need be only enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed. *Wong Sun v. United States*, 371 U.S. 471, 479 (1963). "Probable cause requires more than bare suspicion but requires less than evidence necessary to convict." *Porterfield*, 156 F.3d at 569 (internal quotation marks omitted).

Two factors govern the determination of probable cause in any situation: "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). Therefore, probable cause "could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Id.* Accordingly, the appropriate probable cause inquiry focuses on the charged offense in relation to the information known to Whitesides at the time of Gantt's arrest. Further, because "the reasonableness of a seizure under the Fourth Amendment should be analyzed from an objective perspective[,] . . . the subjective state of mind of the defendant, whether good faith or ill will, is irrelevant." *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 184 n.5 (4th Cir. 1996)).

---

[4]In relevant part, the Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV.

A. *Impersonating an Officer*

Under North Carolina law, the crime of impersonating an officer is defined in relevant part as follows:

   (a)   No person shall falsely represent to another that he is
         a sworn law-enforcement officer. As used in this sec-
         tion, a person represents that he is a sworn law-
         enforcement officer if he:

         (1)   Verbally informs another that he is a sworn
               law-enforcement officer, whether or not the
               representation refers to a particular agency;

         (2)   Displays any badge or identification signify-
               ing to a reasonable individual that the person
               is a sworn law-enforcement officer, whether
               or not the badge or other identification refers
               to a particular law–enforcement agency.

N.C. Gen. Stat. Ann. § 14-277(a) (Lexis 2001); *see also State v. Chisholm*, 369 S.E.2d 375, 378 (N.C. App. 1988) ("To have convicted defendant . . . under [§]14-277 the jury was required to find that defendant represented himself as a sworn law-enforcement officer to another.").

Considering the totality of the circumstances of which Whitesides had knowledge at the time, we find that there was sufficient information to justify a reasonable belief that Gantt had violated § 14-277(a). First, Whitesides had been informed at a shift meeting that the Sheriff's Office had received calls from residents reporting that an individual was impersonating a law enforcement officer and was attempting to sell alarm systems. Second, the individual was identified as Gantt. Third, Brown's incident report stated that Gantt had represented himself to a local resident "as a law enforcement officer to sell alarm systems."[5] (J.A. at 190-91.) Fourth, Diggs's incident report stated that

---

[5]There is uncontested evidence that Whitesides reviewed Diggs's and Brown's incident reports before seeking an arrest warrant. (J.A. at 719-20.)

Gantt told the Allens that he "worked for" the Sheriff's Office. (J.A. at 189.) Fifth, according to Diggs's incident report, the Allens had observed a gold star emblem on the outside of Gantt's briefcase. Sixth, Whitesides personally observed a "pretty big" gold star emblem, marked with the words "Sheriff's Association" on the outside of Gantt's briefcase. (J.A. at 723.) The briefcase contained a demonstration kit for alarm systems and receipts from the sale of alarm systems, making it more likely than not that Gantt carried the bag with him while attempting to sell alarm systems. Regardless of whether this evidence is sufficient to support a conviction under § 14-277(a), the evidence is sufficient to establish probable cause to believe that Gantt had violated the provision.[6]

### B. *Attempting to Sell Alarm Systems Without a License*

North Carolina General Statute § 74D-2 makes it a crime for a person or entity to "engage in or hold itself out as engaging in an alarm systems business without first being licensed in accordance with this Chapter." N.C. Gen. Stat. Ann. § 74D-2 (Lexis 2001). Gantt admitted to Whitesides that he was selling alarm systems door-to-door without a license, and this admission was further corroborated by the contents of Gantt's briefcase. Thus, the only issue is whether Whitesides had probable cause to believe that Gantt was engaged in or holding himself out as engaged in "an alarm systems business."

---

[6]Gantt also alleges that Whitesides violated his Fourth Amendment rights by intentionally lying to the magistrate and claiming that Gantt had displayed his Sheriff Association membership card. Because Gantt's display of his Sheriff Association membership card was not necessary to the finding of probable cause, and thus the issuance of a warrant, *see supra* text pp. 9-10, Whitesides did not violate Gantt's Fourth Amendment rights even if Gantt's allegation is true, *see Franks v. Delaware*, 438 U.S. 154, 155 (1978) (holding that, to show a violation of defendant's Fourth Amendment rights during the warrant process, defendant must make a substantial showing that an affiant for an arrest warrant knowingly, intentionally, or recklessly included a false statement and that "the allegedly false statement [wa]s necessary to the finding of probable cause"); *United States v. Akinkoye*, 185 F.3d 192, 199 (4th Cir. 1999) (finding no *Franks* violation because probable cause existed without the allegedly false identifications).

An "alarm systems business" is defined in pertinent part by statute as

> any person . . . which [sic] sells or attempts to sell by engaging in a personal solicitation at a residence . . . when combined with personal inspection of the interior of the residence . . . to advise on specific types and specific locations of alarm system devices, installs, services, monitors or responds to electrical, electronic or mechanical alarm signal devices, burglar alarms, television cameras or still cameras used to detect burglary, breaking or entering, intrusion, shoplifting, pilferage, or theft.

*Id.* Gantt notes that the North Carolina Alarm Licensing Board ultimately concluded that he was not inspecting the interior of residences and, therefore, did not need a license to sell his alarm systems. This fact, however, is of little consequence, in that evidence sufficient to find an individual guilty of an offense is not required to establish probable cause. *Porterfield*, 156 F.3d at 569. From the incident reports, Whitesides's interview with Gantt, and Whitesides's personal inspection of Gantt's briefcase, Whitesides reasonably believed that Gantt was entering residents' homes in connection with the sale and installation of alarm systems, and Whitesides also reasonably believed that Gantt had demonstrated the alarm system inside the Allens' residence. A reasonable person could logically assume that the installation and/or demonstration of the alarm system involved some inspection of the residence as well as advice on the type or proper location for the alarm system. Thus, the information possessed by Whitesides at the time of the arrest was sufficient to justify his belief that Gantt had violated § 74D-2.

### C.    *Obtaining Property By False Pretenses*

The elements of the crime of obtaining property by false pretenses are: (1) a false representation of a past or subsisting fact or a future fulfillment or event; (2) which is calculated and intended to deceive; (3) which does in fact deceive; and (4) by which the defendant obtains or attempts to obtain something of value from another. N.C. Gen. Stat. Ann. § 14-100 (Lexis 2001); *State v. Hutchinson*, 532 S.E.2d 569, 573 (N.C. App. 2000). As detailed above, Whitesides had reli-

able information that Gantt was representing himself as a law enforcement officer in an attempt to sell alarm systems. Whitesides could reasonably conclude that this representation was false and was calculated to deceive for the purpose of obtaining money from potential customers. Diggs's report indicated that the Allens gave Gantt a deposit for the purchase of an alarm system, which provides a reasonable inference that they were in fact deceived by Gantt's false representation that he worked for the Sheriff's Office. Thus, Whitesides possessed probable cause to believe that Gantt had violated § 14-100.

Because Whitesides possessed probable cause to arrest Gantt for each of the charged offenses, Gantt cannot establish any unreasonable seizure in violation of the Fourth Amendment.[7] Having concluded that Gantt has not demonstrated any constitutional violation, it becomes unnecessary to consider whether the right at issue was clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

III.

Gantt next claims that the district court erred by entering summary judgment in favor of Whitaker and Whitesides (Appellees) on his official capacity claim. As explained above, Gantt is unable to show any constitutional violation. Thus, his official capacity claim fails as a matter of law. *See Belcher v. Oliver*, 898 F.2d 32, 36 (4th Cir. 1990) ("Because it is clear that there was no constitutional violation we need not reach the question of whether a municipal policy was responsible for the officers' actions."). Moreover, even assuming that Whitesides violated Gantt's constitutional rights, Gantt's official capacity claim fails because Gantt has not submitted any evidence that his arrest was

---

[7]In fact, other courts have held that an officer must have probable cause for at least one charge for an arrest on multiple charges to withstand a Fourth Amendment challenge. *See*, *e.g.*, *Barry v. Fowler*, 902 F.2d 770, 773 n.5 (9th Cir. 1990) (holding that an officer need only show probable cause for one of the charged offenses for a seizure to be constitutional, even if the defendant was arrested for more than one offense); *Edwards v. City of Philadelphia*, 860 F.2d 568, 575-76 (3d Cir. 1988) (same) (citing *Lynn v. Garcia*, 531 F.2d 855, 862 (8th Cir. 1976)).

the result of an unconstitutional or illegal county policy, custom, ordinance, regulation, or decision. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *Zepp v. Rehrmann*, 79 F.3d 381, 385 (4th Cir. 1996) ("Because municipal liability cannot rest on the doctrine of respondeat superior, Zepp's § 1983 claims against Harford County and the defendants in their official capacities must fail."). Accordingly, the district court did not err in granting summary judgment in favor of Appellees with respect to Gantt's official capacity claim.

IV.

Gantt's final claim of error involves a newspaper article that he submitted in response to Appellees' motion for summary judgment. The article contained statements allegedly made by Whitaker about Gantt's arrest. (Appellant's Br. at 5.) Appellees filed a motion to strike the article as inadmissible hearsay, which the district court granted. (J.A. at 894-95.) Gantt argues that this decision was erroneous. In the alternative, Gantt argues that the district court should have allowed him leave to depose the author of the article. We review a district court's evidentiary and procedural rulings for an abuse of discretion. *Persinger v. Norfolk & Western Ry. Co.*, 920 F.2d 1185, 1187 (4th Cir. 1990).

This circuit has consistently held that newspaper articles are inadmissible hearsay to the extent that they are introduced "to prove the factual matters asserted therein." *United States v. ReBrook*, 58 F.3d 961, 967 (4th Cir. 1995). Gantt sought to introduce the article for this impermissible purpose and failed to establish the prerequisites for applicability of an exception to the hearsay rule. Thus, the district court did not abuse its discretion by excluding the article. *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment.").

Moreover, the district court did not abuse its discretion by denying Gantt's request for leave to depose the author of the newspaper article after the discovery period had closed. *See RGI, Inc. v. Unified Indus., Inc.*, 963 F.2d 658, 662 (4th Cir. 1992) (noting that the trial court possesses discretion to determine when to allow supplemental material to resolve a summary judgment motion). Nor did the district court err by denying Gantt's motion for voluntary dismissal. *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir. 1996) ("We agree with the district court that a party should not be permitted to avoid an adverse decision on a dispositive motion by dismissing a claim without prejudice."). Gantt's arguments to the contrary are unpersuasive.

V.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*