NO. COA13-531

NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

STATE OF NORTH CAROLINA

    v.

DOUGLAS DALTON RAYFIELD, II

Gaston County
Nos. 10 CRS 56852, 11 CRS
    13597–99, 13601–04.

Appeal by Defendant from order entered 8 September 2011 by Judge Jesse B. Caldwell, III and judgments entered 17 January 2012 by Judge Nathaniel J. Poovey in Gaston County Superior Court. Heard in the Court of Appeals 9 October 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Laura E. Crumpler, for the State.*
>
> *Mark Montgomery for Defendant.*

STEPHENS, Judge.

*Evidence and Procedural History*

Douglas Dalton Rayfield, II ("Defendant") was indicted for multiple counts of sexual acts with K.C.,[1] a minor. Defendant was tried before a jury beginning 9 January 2012 in Gaston County Superior Court. The evidence presented at trial tended to show the following:

---

[1] Initials are used to protect the juvenile's identity.

K.C. was fourteen years old at the time of trial. Her stepfather had known Defendant since childhood, and they were so close that he treated Defendant like a brother. K.C. and Defendant were regularly left unsupervised in her stepfather's house, and Defendant was allowed to transport her to and from various locations without third-party supervision. One day, when K.C. was eight years old, Defendant drove her to his house after working on a car at her stepfather's house. When they arrived at Defendant's residence, he told K.C. to get into a "limo" that was parked in his front yard so they could play a game. Once inside, Defendant told K.C. to pull down her pants. When she did, he touched his penis to her "vagina area." Defendant ejaculated on the seat and told K.C. it was "lotion."

On another occasion, K.C. was playing video games in her room when Defendant walked in and asked her to "help him make lotion." When she refused, Defendant said he would stop "bugging" her if she would help him. He told her to pull down her pants, put his mouth "in my vagina area," and was "licking all over." K.C. left the room to wipe off. When she returned, Defendant had his penis out. She again refused to help him make "lotion." As K.C.'s father pulled into the driveway, Defendant zipped up his pants and left.

On a separate occasion, Defendant drove K.C. from her house to his house to look for a motorcycle part. Defendant brought K.C. to his room and showed her a video of a man having sexual intercourse with a young girl. Defendant told K.C. that he was the man. Defendant then showed K.C. images of a young girl posing "[l]ike a girl really shouldn't be posing" and suggested that K.C. make similar pictures. As the encounter continued, Defendant took off his pants and began "playing with himself." He eventually ejaculated and told K.C. that the ejaculate was not lotion, but actually was "what gets a girl pregnant."

Another time, Defendant groped K.C.'s breast area while they were in the car together. After doing so, he noted that she was "getting bigger."

Defendant twice transported K.C. to a motel. On one occasion, Defendant brought a magazine with pictures of naked men and women for them to view. They looked at the pictures together until K.C.'s mother called Defendant. Defendant told her that they were at Walmart.[2] Another time, Defendant offered to take K.C. to a Girl Scout meeting. Instead of taking her directly to the meeting,

---

[2] As the State notes in its brief, Defendant erroneously stated on appeal that this incident ended when *K.C.* told her mother that she was at Walmart with Defendant. That is incorrect. The trial transcript indicates that the encounter ended when K.C.'s mother called Defendant, and *he* told her that they were at Walmart.

Defendant took her to a motel and asked her to "help him" fill a small black vial with ejaculate. He told her that, if she did not help him fill the vial, someone would cut his fingers off. Defendant asked multiple times, and K.C. refused each time. Defendant eventually yielded and drove K.C. to the meeting without proceeding further.

The last encounter between K.C. and Defendant occurred when K.C. was twelve years old. Defendant drove her to his house, and they parked outside. In the car, he showed her a vial and again informed her that he needed her help to fill the vial and keep his fingers from being cut off. This time K.C. said she would help him save his fingers. Defendant took her pants off and performed missionary-style intercourse on her while they were in the car. He ejaculated outside of her vagina and partially filled the vial. When he was finished, he drove K.C. home.

On 18 May 2010, K.C. told the interim counselor at her middle school that Defendant had shown her a video of a young girl performing sexual acts and had touched her inappropriately. K.C. elaborated, and the school authorities contacted K.C.'s mother and the local police. The next day, Detective R.E. Bloom appeared before the magistrate and submitted a sworn affidavit and application for a search warrant.

Therein, Detective Bloom asserted that he had responded to a call for service to investigate an allegation of sexual assault. He stated that K.C. had informed another officer of incidents occurring from the time she was eight years old until she was eleven. Detective Bloom also alleged that sexual assaults took place in K.C.'s home, in Defendant's home, and in a Gastonia-based motel. Regarding those places, the affidavit listed either the address or provided a description of the approximate location. The affidavit also stated that Detective Bloom had confirmed K.C.'s statement by collecting evidence that Defendant was at America's Best Motel on 8 May 2010. The affidavit asserted that Defendant had shown K.C. pornographic videos and images in his home. The images were of Defendant having sexual intercourse with an unknown female, who K.C. believed was under ten years old. The affidavit noted that Defendant is a registered sex offender and requested a search warrant for Defendant's home and the magazines, videos, computers, cell phones, and thumb drives located therein. The magistrate issued a search warrant, and police searched Defendant's home and the contraband recovered therefrom between 19 May 2010 and 24 May 2010.

Defendant was charged with four counts of indecent liberties with a child, one count of disseminating obscene material, one

count of crime against nature, one count of first-degree statutory sex offense, and one count of first-degree statutory rape. On 6 May 2011, Defendant's counsel filed a motion to suppress the evidence seized during the execution of the search warrant. That motion was denied on 8 September 2011. Defendant's motion to exclude evidence of other crimes, wrongs, or acts was also denied. Items of child pornography and adult pornography were admitted at trial along with the testimony of another person, A.L.,[3] who willingly had sexual intercourse with Defendant when she was fourteen. Defendant was convicted of all the charges and sentenced to imprisonment for no less than 640 months and no more than 788 months.

*Discussion*

Defendant argues on appeal that the trial court erred in (1) denying his motion to suppress the evidence seized from his house and (2) admitting into evidence certain pornography found in Defendant's home and the testimony of A.L. We find no error.

*I. Defendant's Motion to Suppress*

---

[3] Initials are used to protect the juvenile's identity.

In support of his first argument, Defendant claims that (1) the information in the search warrant affidavit was "stale" because as many as three and a half years had passed since Defendant allegedly showed pornography to K.C., (2) the search warrant was based on misleading information, and (3) the search warrant was issued in substantial violation of N.C. Gen. Stat. § 15A-245 (2011). Accordingly, Defendant contends that the evidence found during the search of his home should have been suppressed as "fruit of the poisonous tree." We disagree.

## A. Preservation of Appellate Review

As a preliminary matter, we address the State's contention that Defendant did not adequately preserve appellate review of the denial of his motion to suppress because he failed to object at trial. A pretrial motion to suppress is a type of motion *in limine*. *State v. Golphin*, 352 N.C. 364, 405, 533 S.E.2d 168, 198 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001). Such a "motion . . . [is] not sufficient to preserve for appeal the question of admissibility of evidence if the defendant does not object to that evidence at the time it is offered at trial." *Id.* In order to preserve an issue for appellate review by objection at trial, the appealing party must present "a timely request, objection, or motion, stating the *specific grounds* for the ruling

the party desired the court to make if the specific grounds were not *apparent from the context*." N.C.R. App. P. 10(a)(1) (emphasis added).

In the present case, Defendant made a pretrial motion to suppress the evidence seized from his home. That motion was denied. Defendant renewed the motion at trial, and the motion was again denied. Although Defendant's counsel did not state his grounds for the objection when the evidence was offered at trial, it is clear from the context that he was renewing his earlier objections to the evidence for the reasons stated in his motion to suppress:

> [THE STATE]: Would you open State's Exhibit A?
>
> (The [officer-]witness complied)
>
> . . .
>
> [THE STATE]: What's contained in that box?
>
> [THE OFFICER]: There are numerous periodicals of a sexual nature, magazines. There are several, looks like nine DVDs. There are some printed, looks like images printed off of the Internet of a pornographic sexual nature.
>
> [THE STATE]: Now, you said those are the same items that you saw in the box there in [Defendant's] residence when the box was seized?
>
> [THE OFFICER]: That's correct.
>
> [THE STATE]: Are there any other photographs or items in that box?

[THE OFFICER]: There are some Polaroids, Polaroid photographs, yes. And like I said, the printed — there are some, looks like computer printed images from off of websites of young females.

. . .

[THE STATE]: Your Honor, we would be moving into evidence the contents of that box. . . .

[COUNSEL FOR DEFENDANT]: Of course, you know[] the nature of my objection, Your Honor. . . .

. . .

THE COURT: Do you wish to be heard about any of that, [counsel for Defendant]? I know that you object to all of it, but.

[COUNSEL FOR DEFENDANT]: I do, and I don't wish to be heard about those exhibits being selected or being published.

Based on this exchange it is clear from the context that trial counsel and the trial judge understood that Defendant wished to preserve his earlier objections on the grounds stated therein. Therefore, we hold that this issue was properly preserved for appellate review.[4]

*B. Standard of Review and Legal Background*

Our review of the denial of a motion to suppress is "limited

---

[4] Defendant argues in the alternative that, if this issue was not properly preserved for appellate review, his trial counsel was ineffective. Because we hold that Defendant's trial counsel properly preserved this issue for appeal, we need not address his argument as to ineffective assistance of counsel.

to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982).

> A valid search warrant application must contain allegations of fact supporting the statement. The statements must be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause to believe that the items are in the places or in the possession of the individuals to be searched. Although the affidavit is not required to contain all evidentiary details, it should contain those facts material and essential to the case to support the finding of probable cause. This Court has held that affidavits containing only conclusory statements of the affiant's belief that probable cause exists are insufficient to establish probable cause for a search warrant. The clear purpose of these requirements for affidavits . . . is to allow a magistrate or other judicial official to make an independent determination as to whether probable cause exists for the issuance of the warrant under N.C. Gen. Stat. [§] 15A-245(b). [That section] requires that a judicial official may consider only information contained in the affidavit, unless such information appears in the record or upon the face of the warrant.

*State v. McHone*, 158 N.C. App. 117, 120, 580 S.E.2d 80, 83 (2003) (citation and internal quotation marks omitted).

In preparing an affidavit for this purpose, "[t]he officer

making the affidavit may do so in reliance upon information reported to him by other officers in the performance of their duties." *State v. Horner*, 310 N.C. 274, 280, 311 S.E.2d 281, 286 (1984). "Whether an applicant has submitted sufficient evidence to establish probable cause to issue a search warrant is a non[-]technical, common-sense judgment of laymen applying a standard less demanding than those used in more formal legal proceedings." *State v. Ledbetter*, 120 N.C. App. 117, 121, 461 S.E.2d 341, 344 (1995) (citation and internal quotation marks omitted). "The trial court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

### *C. Staleness*

Appealing the denial of his motion to suppress, Defendant first argues that certain allegations in Detective Bloom's affidavit were stale and did not support a finding of probable cause. Specifically, Defendant points out that there is a three-and-one-half-year gap between the alleged viewing of the pornography in Defendant's house and the time the affidavit was issued. In addition, Defendant contends that other descriptions of sexual conduct with minors described in the affidavit did not have

specific time references and, therefore, failed to support a finding of probable cause. We disagree.

"When evidence of previous criminal activity is advanced to support a finding of probable cause, a further examination must be made to determine if the evidence of the prior activity is stale." *State v. McCoy*, 100 N.C. App. 574, 577, 397 S.E.2d 355, 358 (1990).

> Before a search warrant may be issued, proof of probable cause must be established by facts so closely related to the time of issuance of the warrant so as to justify a finding of probable cause at that time. The general rule is that no more than a "reasonable" time may have elapsed. *The test for "staleness" of information on which a search warrant is based is whether the facts indicate that probable cause exists at the time the warrant is issued.* Common sense must be used in determining the degree of evaporation of probable cause. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar[,] but of variables that do not punch a clock.

*State v. Lindsey*, 58 N.C. App. 564, 565–66, 293 S.E.2d 833, 834 (1982) (citations and internal quotation marks omitted; emphasis added). "[W]here the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant. The continuity of the offense may be the most important factor in determining whether the probable cause is valid or stale." *McCoy*, 100 N.C. App. at 577, 397 S.E.2d at 358 (citation omitted). In

addition, our courts have repeatedly held that "young children cannot be expected to be exact regarding times and dates[.]" *State v. Wood*, 311 N.C. 739, 742, 319 S.E.2d 247, 249 (1984).

Although K.C was generally unable to provide dates to the attesting officers in this case, we hold that her allegations of inappropriate sexual touching by Defendant over a sustained period of time allowed the magistrate to reasonably conclude that probable cause was present to justify the search of Defendant's residence. *See McCoy*, 100 N.C. App. at 577, 397 S.E.2d at 358. "Common sense is the ultimate criterion in determining the degree of evaporation of probable cause." *State v. Jones*, 299 N.C. 298, 305, 261 S.E.2d 860, 865 (1980) (citation omitted). "The significance of the length of time between the point probable cause arose and when the warrant issued depends largely upon the [nature of the property to be seized] and should be contemplated in view of the practical consideration[s] of everyday life." *Id*. (citation omitted). Another variable to consider when determining staleness is the character of the crime. *State v. Witherspoon*, 110 N.C. App. 413, 419, 429 S.E.2d 783, 786 (1993).

In this case, the affidavit set forth that Defendant showed K.C. pornographic videos and images in his home. The images showed Defendant having sexual intercourse with an unknown female, who

K.C. believed was under ten years old. The affidavit went on to state that Defendant was a registered sex offender. It then requested a search warrant for Defendant's home and included magazines, videos, computers, cell phones, and thumb drives in the objects to be searched.

Our Supreme Court has determined that, when items to be searched are not inherently incriminating and have enduring utility for the person to be searched, a reasonably prudent magistrate could conclude that the items can be found in the area to be searched. *Jones*, 299 N.C. at 305, 261 S.E.2d at 865. Here, the items sought by the search warrant — magazines, videos, computers, cell phones, hard drives, gaming systems, MP3 players, a camera, a video recorder, thumb drives, and other pictures or documents — were not incriminating in and of themselves and were of enduring utility to Defendant. *See, e.g.*, *id.* (upholding a search warrant when five months had elapsed between the time the witness saw the defendant's hatchet and gloves and the witness spoke to police because, *inter alia*, the items were not incriminating in and of themselves and had utility to the defendant).

There was no reason for the magistrate in this case to conclude that Defendant would have felt the need to dispose of the

evidence sought even though acts associated with that evidence were committed years earlier. Indeed, a practical assessment of the information contained in the warrant would lead a reasonably prudent magistrate to conclude that the computers, cameras, accessories, and photographs were likely located in Defendant's home even though certain allegations made in the affidavit referred to acts committed years before. *See State v. Pickard*, 178 N.C. App. 330, 336, 631 S.E.2d 203, 208 (2006) (holding that the affidavit provided the magistrate with a substantial basis for concluding that probable cause existed to issue a search warrant when the items sought — computers, computer equipment and accessories, cassette videos or DVDs, video cameras, digital cameras, film cameras, and accessories — were not particularly incriminating and were of enduring utility to the defendant). Accordingly, the information contained in the search warrant was not stale and the magistrate had sufficient evidence to support a determination of probable cause. Defendant's first argument is overruled.

### D. False and Misleading Information

Second, Defendant contends that the search warrant was invalid because Detective Bloom's affidavit was based on false and misleading information. We disagree.

The Fourth Amendment's requirement of a factual showing sufficient to constitute "probable cause" anticipates a truthful presentation of facts. *Franks v. Delaware*, 438 U.S. 154, 164-65, 57 L. Ed. 2d 667, 678 (1978).

> N.C. Gen. Stat. § 15A-978 provides that a defendant can challenge the "validity of a search warrant and the admissibility of evidence obtained thereunder by contesting the truthfulness of the testimony" which showed probable cause for the issuance of the warrant. N.C. [Gen. Stat.] § 15A-978(a)[]. The section defines truthful testimony as testimony which reports in good faith the circumstances relied on to establish probable cause.
>
> A factual showing sufficient to support probable cause requires a truthful showing of facts. Truthful, however, does not mean . . . that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge. . . . Instead, "truthful" means that the information put forth is believed or appropriately accepted by the affiant as true. [Because there is a presumption of validity with respect to the affidavit supporting the search warrant, a] defendant must make a preliminary showing that the affiant knowingly, or with reckless disregard for the truth, made a false statement in the affidavit. Only the affiant's veracity is at issue in the evidentiary hearing. Furthermore, a claim . . . is not established by presenting evidence which merely contradicts assertions contained in the affidavit or shows the affidavit[] contains false statements . . . . Rather, the evidence presented must establish

> facts from which the finder of fact might conclude that the affiant alleged the facts in bad faith.

*State v. Severn*, 130 N.C. App. 319, 322, 502 S.E.2d 882, 884 (1998) (citations, certain internal quotation marks, and ellipses omitted). Further, an inadvertent error by an officer making an affidavit, when he or she did not know it was an error, may be immaterial where the affidavit is still sufficient on its face to support a finding of probable cause. *See State v.* Steele, 18 N.C. App. 126, 196 S.E.2d 379 (1973).

In support of his argument that Detective Bloom's affidavit was based on false and misleading information sufficient to invalidate the search warrant, Defendant first notes that the affidavit does not provide the name or address of the motel where K.C. was taken. However, as our Supreme Court stated in *Wood*, children are not expected to remember exact dates and times. 311 N.C. at 742, 319 S.E.2d at 249. Likewise, the fact that K.C. relayed this information to Detective Bloom without specific details regarding the name of the motel or its address is not fatal.

Second, Defendant points out that Detective Bloom did not speak directly to K.C. when determining the information to be used in the affidavit, relying instead on a report from Officer Jeff Bryant and a video interview of K.C. This point is misplaced.

Probable cause for an affidavit may be based on information relayed from one officer to another if that information was reported while the officer performed his or her duties. *Horner*, 310 N.C. at 280, 311 S.E.2d at 286. The affidavit in this case states that, during a call for service, the school resource officer at K.C.'s middle school advised Officer Bryant of K.C.'s allegations. As "[o]bservations of fellow officers engaged in the same investigation are plainly a reliable basis for a warrant applied for by one of their number[,]" it was proper for Detective Bloom to rely on information from Officer Bryant for a probable cause determination. *See id.*

Third, Defendant asserts that Detective Bloom's affidavit contained nothing about a discrepancy between when K.C. claimed to have been taken to the motel and the date that someone named "Douglas Rayfield" registered at America's Best Value Motel. To the extent that there was such a discrepancy, it was not sufficient to invalidate the search warrant.

As we have already noted,

> in the interests of justice and recognizing that young children cannot be expected to be exact regarding times and dates, a child's uncertainty as to time or date upon which the offense charged was committed goes to the weight rather than the admissibility of the evidence.

*Wood*, 311 N.C. at 742, 319 S.E.2d at 249. In denying Defendant's motion to suppress, the trial court found that Detective Bloom made "honest mistakes and inadvertence" which did not unconstitutionally taint the search warrant. In addition, much of the confusion in the affidavit stemmed from information about the motel name and certain dates. Analyzing the affidavit as a whole, however, Detective Bloom made clear that K.C. was assaulted by Defendant on multiple occasions for three years. It states that (1) Defendant was a good friend of K.C.'s stepfather and (2) that sexual assaults took place in K.C.'s home, Defendant's home, and a nearby motel. Further, the affidavit asserts that K.C. viewed pornographic videos of Defendant and another girl with Defendant in his home. These findings support the trial court's conclusion that probable cause was present to justify a search of Defendant's residence for magazines, videos, computers, hard drives, cameras, and other pictures.

Therefore, to the extent Detective Bloom made mistakes in the affidavit, we conclude that those mistakes did not result from false and misleading information and that the affidavit's remaining content was sufficient to establish probable cause. Accordingly, Defendant's second argument is overruled.

*E. The Validity of the Search Warrant Under 15A-245(a)*

Section 15A-245(a) provides in pertinent part that:

> [An] issuing official may examine on oath the applicant . . . , but information other than that contained in the affidavit may not be considered by the issuing official in determining whether probable cause exists for the issuance of the warrant unless the information is either recorded or contemporaneously summarized in the record or on the face of the warrant by the issuing official.

N.C. Gen. Stat. § 15A-245(a) (2011).

The magistrate in this case indicated on the search warrant that, in addition to the affidavit, the application was supported by Detective Bloom's sworn testimony. The magistrate did not indicate, however, that the testimony was reduced to writing or recorded. In its order on the motion to suppress, the trial court found that Detective Bloom's oral testimony was not reduced to writing. Thus, the magistrate violated section 15A-245 by neither recording nor contemporaneously summarizing the oral testimony offered by Detective Bloom.

On appeal, Defendant argues that the trial court erred in denying his motion to suppress because the magistrate substantially violated section 15A-245, requiring that the evidence obtained from his home be suppressed. Alternatively, he contends that this case should be remanded for further findings of fact and conclusions of law due to the trial court's failure to

properly address the nature of the magistrate's violation. Because our analysis of Defendant's argument depends on whether the trial court properly addressed the validity of the search warrant, we address that question first.

### *i. The Trial Court's Order*

In his alternative argument, Defendant contends that we should remand this case for a new hearing followed by complete and proper findings of fact and conclusions of law on grounds the trial court (1) made "incomplete" findings and (2) failed to make any findings or conclusions as to whether the magistrate substantially violated section 15A-245. We are unpersuaded.

### *a. Findings of Fact*

As discussed above, this Court is limited to determining whether a trial court's findings of fact "are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Williams*, 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008) (citation and internal quotation marks omitted). In this case, the trial court made the following pertinent findings of fact in its order denying Defendant's motion to suppress:

> 3. That on the onset date, May 19th, 2010, Detective Bloom appeared before the magistrate

and submitted a sworn application and affidavit[ ]in which, among other things, he asserted his history and training in law enforcement. That he had responded to a call for service at [K.C.'s middle school] by a resource officer. That a 12[-]year-old white female, [K.C.], was allegedly sexually assaulted by one Douglas Dalton Rayfield, on multiple occasions. That Detective Bloom spoke with [K.C.], and that the affidavit submitted to the magistrate contains the statement that she advised that the incidents occurred from the time she was 8[ ]years old until she was 11[ ]years old. That she further explained that [Defendant] was[ ]a good friend of her father. That the affidavit submitted with the application[ ]for the search warrant further advised that sexual assaults took place in her home at [the listed address], and at the home of [D]efendant, [at the listed address[5]]. That the affidavit also submitted that [K.C.] said that a recent sexual assault took place at a motel in the City of Gastonia, behind an old steakhouse at the intersection of[ ]Highway 321 and Interstate 85.

4. That said affidavit[ ]in support of the search warrant further alleged that on May 19th, 2010, during a child advocacy hearing interview, [K.C.] provided details about the assaults. That the affidavit[ ]in support of the search warrant stated that Detective Bloom had confirmed [K.C.'s] statement by collecting information that confirmed that [Defendant] was at America's Best Motel on May 8th, 2010. That the affidavit further sets forth that at [Defendant's] home [Defendant] showed [K.C.] pornographic videos and images of [Defendant] having intercourse with an unknown female, [who K.C.] believed was around 10[ ]years of age. That the affidavit further set forth that [Defendant] was a registered sex offender.

---

[5] Street addresses have been redacted to protect K.C.'s identity.

That the affidavit further requested the search warrant for [Defendant's] home at [the listed address],[ ]and that [the warrant] would include magazines, videos, computers, cell phones, hard drives, gaming systems, thumb drives, and the like.

5. That Detective Bloom went to the [m]otel on Highway 321, which was America's Best Value. That the name of this [m]otel had been recently changed. That at some time before that it was a Motel 6, by name.

. . .

7. That there are several hotels . . . off of Interstate 85 and Highway 321. That there was a receipt which Detective Bloom obtained from America's Best Value Inn, which reflected that on May the 8th of 2010, that [Defendant ]rented a room, asserting that there would be two people in his party, and that he was leaving at 11:00 a.m. on May the 9th, 2010.

. . .

9. That [K.C.] stated that [Defendant's] [m]otel room was messy with clothes all around. That while there she saw a video of the man that she identified as [Defendant] with a girl [who] she contended was about 10[ ]years of age.

. . .

13. That [K.C.] made a statement that there had been oral sex with [Defendant] some two weeks after her 9th birthday. That she further testified that there was a sexual encounter in a car wash, and that she was afraid of cameras catching them. That at one point [Defendant] offered her $100 to continue with sex acts.

. . .

> 23. That questions about the name of the [m]otel where the victim indicated she was with [Defendant] and confusion regarding whether the name of the [m]otel was Knights Inn or America's Best are explained by the fact that the [m]otel's name had recently changed shortly before Detective Bloom visited the[ m]otel, and the fact that [K.C.], who reported being at the hotel, is a minor, whose memory for specifics, such as the name of a hotel, cannot be expected to be on par with an adult.

Given those findings, the court denied Defendant's motion to suppress and concluded as a matter of law "[t]hat the totality of the circumstances surrounding the issuance of the said search warrant supports the magistrate's finding of[ ]probable cause upon the aforesaid affidavit of Detective Bloom."

In his brief, Defendant disputes certain elements of findings of fact 7, 9, 13, and 23. Regarding finding 7, Defendant points out that Detective Bloom's testimony contradicts the Court's finding that *two people* were listed on the receipt from the motel. At the suppression hearing, Detective Bloom testified that the receipt did not indicate how many people were in Defendant's party. Defendant also notes that finding of fact 9 contradicts Detective Bloom's affidavit regarding *where* K.C. saw the video of Defendant having sex with a minor. The finding states that it occurred in the motel room while the affidavit asserts that it occurred in

Defendant's home. Defendant also argues that portions of finding of fact 13 — which describes certain sexual acts committed by Defendant — are not relevant to the trial court's determination of probable cause because they occurred too long ago.[6] Lastly, Defendant quibbles with the trial court's finding that the confusion regarding the name of the motel was resolved because the motel's name had recently changed from "Knights Inn" to "America's Best Inn," asserting that the motel had in fact changed its name from "Motel 6," as stated in the trial court's fifth finding of fact. These arguments are insufficient to overturn the trial court's conclusion regarding probable cause.

"Probable cause need not be shown by proof beyond a reasonable doubt, but rather [it is shown by] whether it is more probable than not that . . . contraband will be found at a specifically described location." *State v. Edwards*, 185 N.C. App. 701, 704, 649 S.E.2d 646, 649 (2007). While Defendant has correctly identified errors in the trial court's findings of fact, he fails to address the Court's myriad other findings as they relate to its conclusion that probable cause to search Defendant's home was present. As discussed above, Detective Bloom's affidavit —

---

[6] We resolved this issue in our discussion regarding staleness, *supra*, and do not address it further.

summarized by the trial court in findings of fact 3 and 4 — was sufficient on its own to establish probable cause. Therefore, to the extent the trial court's other findings contain errors, they are not so severe as to undercut the court's conclusion of law that probable cause was present to justify the search. In light of the other evidence cited by the trial court in support of its conclusion that probable cause was present to justify the search of Defendant's home, this argument is overruled.

> b. *Findings and Conclusions Regarding the Substantiality of the Statutory Violation*

Section 15A-974(b) provides that

> [t]he court, in making a determination whether or not evidence shall be suppressed under this section, shall make findings of fact and conclusions of law which shall be included in the record, pursuant to [section] 15A-977(f).

N.C. Gen. Stat. § 15A-974 (2011). Pursuant to that section, Defendant contends that the trial court erred by failing to make findings and conclusions regarding "the substantiality of the statutory violation." We disagree.

On the nature of the magistrate's statutory violation, the trial court made the following pertinent findings of fact:

> 15. That in presenting his application in writing to the magistrate, Detective Bloom also gave some oral testimony which was not reduced to writing by either Detective Bloom or the magistrate.

. . .

36. That the Court finds that the mistakes and factual discrepancies set forth in [the] affidavit were the result of honest mistakes and inadvertence[] and did not take away from the validity of the consideration of the totality of the circumstances relative to the issuance of [the] warrant.

The trial court also concluded as a matter of law:

2. That any violation of law regarding the oral testimony of Detective Bloom not being recorded would constitute a statutory violation and not a constitutional violation of [Defendant's] rights under the Fourth and Fourteenth Amendments to the United States Constitution and the North Carolina Constitution.

. . .

4. That the totality of the circumstances surrounding the issuance of the . . . search warrant supports the magistrate's finding of probable cause upon the aforesaid affidavit of Detective Bloom.

Contrary to Defendant's argument on appeal, the cited authority — section 15A-974(b) — does not require the trial court to make findings of fact and conclusions of law regarding whether a statutory violation was substantial and, therefore, whether the violation would require suppression of the evidence. Instead, the statute simply states that the trial court must make findings of

fact and conclusions of law in support of its order on a motion to suppress.

In this case, the court made findings of fact based on Detective Bloom's affidavit. Those findings are discussed above, and we have already determined that they supported its determination that probable cause was present and were therefore sufficient to justify the court's denial of Defendant's motion to suppress. Accordingly, Defendant's alternative argument is overruled.

### ii. The Magistrate's Statutory Violation

Defendant also contends that the magistrate's error in failing to record Detective Bloom's testimony was a *substantial violation* of section 15A-245(a), requiring suppression of the evidence under section 15A-974(b), because (1) the error affected Defendant's constitutional right to have a "neutral and detached magistrate determine probable cause,"[7] (2) Detective Bloom's unrecorded testimony was used by the trial court for certain of its findings of fact in support of its decision to deny Defendant's

---

[7] On this point, Defendant asserts that "[b]y waiving the requirement of a contemporaneous recording of the detective's statement, the magistrate opened the way for the detective to provide after the fact, self-serving testimony at the suppression hearing to correct and fill in discrepancies in and omissions from his affidavit."

motion to suppress, (3) Detective Bloom and the magistrate intentionally "chose to ignore [section 15A-245]" because the statute had been in effect for five years and Detective Bloom was a "seasoned" officer, and (4) "failure to enforce the statute [would] doubtless result in future improper searches" as there would be "nothing to prevent an officer's providing self-serving testimony to create a *post hoc* justification for the search if it proves fruitful." For support, Defendant cites to *McHone*, where we held that a search warrant application maintained "only" by a *conclusory affidavit* constituted a substantial violation of sections 15A-244 and 15A-974. 158 N.C. App. at 122, 580 S.E.2d at 84. We are unpersuaded.

In pertinent part, the text of Detective Bloom's affidavit reads as follows:

> . . .
>
> [T]he Gaston County Police Department responded to a call for service to [K.C.'s middle school].
>
> [The school resource officer] advised Officer . . . Bryant, of the Gaston County Police Department, that 12[-]year[-]old white female, [K.C.], was allegedly [s]exually [a]ssaulted by [Defendant] on multiple occasions. [K.C.] advised that the incidents occurred from the time she was 8 years old until she was 11 years old. She explained that [Defendant] was a good friend of her father. She advised that the sexual assaults took

place in her home, [at the listed address] and at the home of Defendant, [at the listed address]. She also advised that a recent sexual assault took place at a motel in the City of Gastonia behind an old steak house at the intersection of Highway 321 and Interstate 85.

On 05/19/2010, during a [c]hild [a]dvocacy [c]enter interview, [K.C.] provided details about the assaults. Affiant confirmed [K.C.'s] statement by collecting information that confirmed [Defendant] was at the America's Best Motel on May 8, 2010. [K.C.] also explained that at [Defendant's] home in his bedroom[, he] showed her pornographic videos/images of [himself] having sexual intercourse with an unknown female[, who K.C.] believed was around the age of 10 years old. It has been also confirmed that [Defendant] is a registered [sex o]ffender.

Based on the information in this affidavit, Affiant respectfully requests that a search warrant be issued for the home, vehicles, common areas, and outbuilding for [Defendant] at [the listed address] so that a complete investigation may be conducted and physical evidence may be collected to assist in the investigation of [s]ex [o]ffense.

Generally, an affidavit in an application for a search warrant

is deemed sufficient

if it supplies reasonable cause to believe that the proposed search for evidence of the commission of the designated criminal offense will reveal the presence upon the described premises of the objects sought and that they will aid in the apprehension or conviction of the offender.

*State v. Vestal*, 278 N.C. 561, 576, 180 S.E.2d 755, 765 (1971),

*cert. denied sub nom.*, *Vestal v. North Carolina*, 414 U.S. 874, 38 L. Ed. 2d 114 (1973). "Probable cause cannot be shown[, however,] by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the underlying circumstances upon which that belief is based[.]" *State v. Campbell*, 282 N.C. 125, 130-31, 191 S.E.2d 752, 756 (1972) (citation and internal quotation marks omitted).

The affidavit in this case is not merely conclusory. It includes (1) background of the circumstances of Detective Bloom's involvement in the case, (2) details of where the sexual assaults took place, (3) details of child pornography that was in Defendant's possession and that had been used during the sexual assaults, (4) the assertion that Defendant is a registered sex offender, and (5) the fact that Defendant resided at the house that was the subject of the search warrant. Further, as we have already pointed out, the information provided by Detective Bloom in his affidavit was sufficient — on its own — for the magistrate to properly make a determination that probable cause was present in this case. Accordingly, the magistrate did not substantially violate section 15A-245(a) in failing to include a record of Detective Bloom's oral testimony, and, therefore, the trial court

did not err in denying Defendant's motion to suppress.[8]

*II. Adult Pornography and A.L.'s Testimony*

In addition to the arguments addressed above, Defendant contends that the trial court erred in admitting into evidence (1) certain portions of the pornography seized from his home and (2) the testimony of A.L. Defendant asserts that both constitute irrelevant, inadmissible character evidence under Rule 404(b) and are substantially more prejudicial than probative under Rule 403. Defendant also asserts that the evidence admitted under 404(b) merely shows his "propensity" or "disposition" to commit sex crimes and, therefore, is inadmissible. We disagree.

"Rule 404(a) is a general rule of exclusion, prohibiting the introduction of character evidence to prove that a person acted in conformity with that evidence of character." *State v. Bogle*, 324 N.C. 190, 201, 376 S.E.2d 745, 751 (1989). Rule 404(b) is a

> general rule of inclusion of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but one exception[,] requiring [the exclusion of evidence] if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

---

[8] Defendant also contends that "[i]t cannot be gainsaid that [Defendant] was prejudiced by the denial of his motion to suppress." Because we have concluded that the trial court did not err in denying Defendant's motion to suppress, this argument is overruled.

*State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990) (emphasis in original). Rule 404(b) provides that while evidence of "other crimes, wrongs, or acts" is not admissible "to prove the character of a person in order to show that he acted in conformity therewith," such evidence is admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment[,] or accident." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2011).

> Though this Court has not used the term *de novo* to describe its own review of 404(b) evidence, we have consistently engaged in a fact-based inquiry under Rule 404(b) while applying an abuse of discretion standard to the subsequent balancing of probative value and unfair prejudice under Rule 403. [W]hen analyzing rulings applying Rules 404(b) and 403, we conduct distinct inquiries with different standards of review. When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling . . . we look to whether the evidence supports the findings and whether the findings support the conclusions. We review *de novo* the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.

*State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 158-59 (2012) (italics added).


*A. Adult Pornography*

The trial court denied Defendant's motion to exclude the adult pornography found in his home because the pornography constituted "relevant" evidence bearing upon Defendant's motive, intent, and common plan or scheme with respect to the alleged crimes. On appeal, Defendant argues that the trial court erred in admitting the adult pornography on those grounds. Defendant contends that there was no evidence that he ever showed K.C. all of the images seen by the jury, the adult pornography was not relevant to any issue other than Defendant's "propensity" or "disposition" to commit sex crimes against girls, and, therefore, the adult pornography should have been excluded under Rule 404(b).

In *State v. Brown*, __ N.C. App. __, __, 710 S.E.2d 265, 269-70 (2011), *affirmed per curiam*, __ N.C. __, 722 S.E.2d 508 (2012), this Court considered the admissibility of pornography showing incestuous sexual acts, referred to as "Family Letters," in a prosecution for sexual offenses committed by a father against his daughters. Noting that a defendant's possession of general pornography was usually considered inadmissible, we pointed out that the Family Letters material "was of an uncommon and specific type of pornography; the objects of sexual desire aroused by the pornography in evidence were few; and the victim was the clear

object of the sexual desire implied by the possession [of that material]." *Id.* at __, 710 S.E.2d at 269.

Here the trial court admitted the pornography over Defendant's motion to exclude and contemporaneously instructed the jury that it could consider the pornography only if it determined that the material was relevant to Defendant's motive or intent to commit the alleged criminal conduct. The pornography was found at Defendant's house after a valid warrant was obtained to search the premises, as discussed above, and there was testimony at trial that Defendant showed K.C. both child pornography and adult pornography. For these reasons, the evidence was admissible under Rule 404(b) as relevant to Defendant's motive or intent.

Nonetheless, the pornography may still be deemed inadmissible under the Rule 403 balancing test, *i.e.*, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *State v. Summers*, 177 N.C. App. 691, 697, 629 S.E.2d 902, 907 ("Once the trial court determines evidence is properly admissible under Rule 404(b), it must still determine if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Rule 403.") (citation and internal quotation marks omitted), *disc. review denied and appeal dismissed*, 360 N.C. 653, 637 S.E.2d 192 (2006); *see also* N.C. Gen.

Stat. § 8C-1, Rule 403 (2011). This determination "is within the sound discretion of the trial court, whose ruling will be reversed on appeal only when it is shown that the ruling was so arbitrary that it could not have resulted from a reasoned decision." *State v. Bidgood*, 144 N.C. App. 267, 272, 550 S.E.2d 198, 202, *cert. denied*, 354 N.C. 222, 554 S.E.2d 647 (2001).

Here, "a review of the record reveals that the trial court was aware of the potential danger of unfair prejudice to [D]efendant and was careful to give a proper limiting instruction to the jury." *State v. Hipps*, 348 N.C. 377, 406, 501 S.E.2d 625, 642 (1998). The trial judge viewed the evidence himself, heard arguments from the attorneys, and ruled on its admissibility as follows:

> Weighing the prejudicial effect of [the pornography], although it is prejudicial to [D]efendant's case, it is not so prejudicial such that the danger of unfair prejudice outweighs the probative value. In conducting the Rule 403 analysis I'll find that this evidence withstands any 403 challenge in that the danger of unfair prejudice does not substantially outweigh the probative value. In exercise of the Court's discretion, however, I am going to limit the number of exhibits that are published to the jury.

At trial, the court limited the number of pornographic magazines that could be viewed by the jury. Moreover, the court gave the appropriate limiting instruction. Indeed, the pornographic

evidence admitted in this case corroborated K.C.'s statement that Defendant showed her a video of an adult man having sex with a young girl, as well as pornographic images of both girls and women, and that Defendant suggested K.C. have photos of herself taken. Given the trial judge's careful handling of the process, we conclude that it was not an abuse of discretion for the trial court to determine that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence and, accordingly, to admit into evidence the pornography found in Defendant's home. Defendant's argument as to this evidence is overruled.

*B. A.L.'s Testimony*

In addition, Defendant contends that the trial court erred in admitting evidence of past acts of sexual misconduct by Defendant against A.L. Defendant asserts that the evidence was inadmissible under N.C. Gen. Stat. § 8C-1, Rule 404(b) and that the probative value, if any, was substantially outweighed by the danger of unfair prejudice under Rule 403. The crux of Defendant's argument is that the acts of sexual misconduct committed against A.L. have nothing to do with K.C.

Defendant filed a motion *in limine* to exclude evidence of past acts of sexual misconduct against A.L. As noted above, a

motion *in limine* is not sufficient to preserve for appeal the question of admissibility of evidence if the defendant does not object to that evidence at the time it is offered at trial. *See State v. Hayes*, 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999). Here, the trial court concluded that the evidence of prior acts was admissible under Rule 404(b) as sufficiently similar and not too remote in time. The State then elicited testimony on direct examination from A.L. about sexual misconduct committed by Defendant. Defendant never objected to the admissibility of A.L.'s testimony.

Indeed, in the context of arguing the admissibility of the pornographic magazines, Defense counsel conceded that A.L.'s testimony was proper 404(b) evidence:

> [COUNSEL FOR DEFENDANT]: . . . . Is there any possibility[ ]based on the evidence in this case that any juror could reasonably believe that if my client did the physical acts that [K.C.] has testified to, that he had some intent other than to arouse his own sexual — satisfy his own sexual gratification, or if he touched her, looking at the indecent liberties, that it was for the purpose of sexual gratification. . . . If the jurors believe that he did [the] acts there's really no possibility that they're going to say, well, he did it but we don't know why he did it, he was maybe conducting research or doing — I mean, there's just not a possibility[] because it goes right with the evidence that has been presented by [K.C.] If she [is to be] believed then the only possible intent was to

gratify [Defendant's] sexual desires and his purpose as well.

THE COURT: Are you stipulating to that fact?

[COUNSEL FOR DEFENDANT]: Well, I'm not stipulating to it, Your Honor, I'm just saying that what other possible conclusion could there be. And the State is already going to get in the testimony of [A.L.] under 404(b) as to the prior conduct. I mean, it just seems like this is unnecessary, it's cumulative, and it's a very weak issue that this is necessary evidence to admit.

In addition, the following exchange occurred immediately prior to

A.L.'s testimony:

[COUNSEL FOR DEFENDANT]: For the record, I would object to the recall of Sergeant Dover. But I also have an issue to address with [A.L.].

THE COURT: Okay. What's that issue?

[COUNSEL FOR DEFENDANT]: That issue, Your Honor, is this. When the Court denied my motion to exclude her 404(b) testimony in that same proceeding the Court granted the motion to keep out the conviction that stemmed from that conduct unless my client testified or unless we opened the door during cross[-]examination. *And what I intend to do when she testifies is not challenge in any way her allegation that there was a sexual act*, *sexual intercourse*, *that occurred on August 25th, 2001.* That was the basis for the conviction, I'm not contesting that at all. However, in the materials that were handed over from the State when they interviewed her she's made a new claim[ ]that was never made back during that time frame. And I've read all of the discovery. Now she is saying that in addition

> to that there was an act where they had sexual intercourse in my client's car. So I do want to challenge that because everything I can see that was not the basis of the conviction. *I'm not contesting in any way shape or form that that act happened*, *however*, *I do want to challenge that allegation because I don't think that was part of that case. And I believe by doing so I'm not opening the door to the conviction.*

(Emphasis added).

Unlike the objection to the motion to suppress discussed *supra*, it is not clear from this colloquy that counsel for Defendant was objecting to the admission of A.L.'s testimony under Rule 404(b). Defense counsel clearly objects to the recall of Sergeant Dover, but does not make a similar objection to A.L.'s testimony. Although counsel for Defendant mentioned Rule 404(b) in his objection, it is clear from the context of this exchange that his objection was to obtain a preliminary ruling that his cross-examination of A.L. would not open the door to evidence of Defendant's conviction by challenging the veracity of the car incident with A.L. As Defendant did not object pursuant to Rule 404(b), such objection is not preserved on appeal. *See State v. Lawrence*, 365 N.C. 506, 517-19, 723 S.E.2d 326, 334 (2012); *see also Wood v. Weldon*, 160 N.C. App. 697, 699, 586 S.E.2d 801, 803 (2003) (citation and internal quotation marks omitted) (holding that a defendant cannot "swap horses between courts in order to

get a better mount" on appeal). Because Defendant did not argue plain error in the alternative, he may not seek appellate review of this issue.

Assuming *arguendo* that Defendant properly preserved this issue for review, his argument would fail nonetheless. The test for determining the admissibility of evidence of prior conduct is "whether the incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C. Gen. Stat. § 8C-1, Rule 403." *State v. Carpenter*, 179 N.C. App. 79, 84, 632 S.E.2d 538, 541 (citation omitted), *rev'd on other grounds*, 361 N.C. 382, 646 S.E.2d 105 (2007). "The determination of similarity and remoteness is made on a case-by-case basis," with the degree of similarity required being that which would lead the jury to the "reasonable inference that the defendant committed both the prior and present acts." *Id.* (citation and internal quotation marks omitted). Additionally, this Court stated that we have been "markedly liberal in admitting evidence of similar sex offenses to show one of the purposes enumerated in Rule 404(b)." *State v. Carpenter*, 147 N.C. App. 386, 392, 556 S.E.2d 316, 320 (2001) (citation and internal quotation marks omitted).

The Supreme Court in *Beckelheimer* upheld a trial court's

admission of evidence under Rule 404(b) based on "key similarities"

between the sex offense for which the defendant was being tried

and a prior sex offense.[9] 366 N.C. at 131, 726 S.E.2d at 159. In

_____

[9] In *Beckelheimer*,

> [t]he trial court found that "the age range of [the 404(b) witness] was close to the age range of the alleged victim," a finding supported by the evidence: the victim was an eleven-year-old male cousin of [the] defendant, and the witness was also [the] defendant's young male cousin who was around twelve years old at the time of the alleged prior acts. The trial court found similarities in "the location of the occurrence," a finding also supported by the evidence: [the] defendant and the victim spent time playing video games in [the] defendant's bedroom where the alleged abuse occurred, and [the] defendant and the witness also spent time playing video games together and in [the] defendant's bedroom where the alleged abuse occurred. Finally, the trial court found similarities in "how the occurrences were brought about," a finding supported by the evidence: the victim described two incidents during which the defendant placed his hands on the victim's genital area outside of his clothes while pretending to be asleep; he also described an incident during which [the] defendant lay on him pretending to be asleep, then reached inside the victim's pants to touch his genitals, then performed oral sex on the victim. The witness testified to a similar progression of sexual acts, beginning with fondling outside the clothing and proceeding to fondling inside the pants and then to oral sex; he also described how [the] defendant would pretend to be asleep while touching him.

so holding, the Court noted the trial court's finding that the victim in the charged crime was an eleven-year-old cousin of the defendant, while the 404(b) witness was also a cousin who had been around twelve years old at the time of the prior acts. *Id.* at 131, 726 S.E.2d at 159. Accordingly, the Court "conclude[d] . . . that the similar ages of the victims is more pertinent in [the] case than the age difference between victim and perpetrator." *Id.* at 132, 726 S.E.2d at 160. In addition, the Court upheld the trial court's finding that the location of the occurrence of the acts was similar in that the crime and the 404(b) offense both occurred after the defendant played video games with his victims in his bedroom. *Id.* at 131, 726 S.E.2d at 160. Lastly, the Court emphasized that the crime and the 404(b) offenses had both been "brought about" in the same manner with a similar progression of sexual acts. *Id.* at 131, 726 S.E.2d at 160. Therefore, the Court concluded that the similarities of the victims (*i.e.*, their ages and relationship to the defendant), the similarities of the locations, and the similarities in how the sexual offenses came to occur were sufficient to render the evidence admissible under Rule

---

366 N.C. at 131, 726 S.E.2d at 159. The North Carolina Supreme Court concluded that these similarities were sufficient to support the State's theory of *modus operandi. Id.*

404(b). *Id.* at 133, 726 S.E.2d at 160.

Defendant argues that his sexual relationship with A.L. was too remote in time and dissimilar in nature to be admissible under Rule 404. However, A.L was assaulted in the same car as K.C. While A.L. testified that the sex was consensual, A.L was a fourteen-year-old girl at the time of the assault and could not legally consent to sexual intercourse with Defendant. *See* N.C. Gen. Stat. § 14-27.7A (2011). Indeed, contrary to the language in Defendant's brief, this encounter was *not* a "teenage romance."[10]

Defendant also argues that the roughly seven-year time period between the two assaults makes the assault of A.L. irrelevant to the assault of K.C. under Rule 404. However, this Court in *State v. Williamson* pointed out that "a ten-year gap between instances of similar sexual misbehavior [does] not render them so remote in time as to negate the existence of a common plan or scheme." 146 N.C. App. 325, 333, 553 S.E.2d 54, 60 (2001), *disc. review denied*, 355 N.C. 222, 560 S.E.2d 366 (2002). Therefore, the seven-year time gap would not negate the existence of a common plan or scheme in this case.

---

[10] Defendant repeatedly misstated the age difference between A.L. and Defendant in his brief. When A.L. was fourteen, Defendant was actually a twenty-seven-year-old man despite the fact that he told her he was nineteen.

Lastly, we note that Defendant's interactions with A.L. are sufficiently similar to his interactions with K.C. such that A.L.'s testimony is relevant and admissible under Rule 404(b). Both children were young, white, and female. Defendant sexually assaulted each of them in the same car, a silver Hyundai Tiburon. He also took both children to a motel, where they engaged in sexual activity. While there were no pornographic materials or vials used when Defendant sexually assaulted A.L., he did ask both victims to have their own photos or videos made.

For the reasons stated above, Defendant's arguments are overruled, and we find

NO ERROR.

Judges CALABRIA and ELMORE concur.