STATE OF NORTH CAROLINA v. VERGIL WAYNE HUTCHINSON

No. COA99-242

(Filed 18 July 2000)

## 1. Evidence— subsequent crime or act—intent and motive

The trial court did not abuse its discretion in a first-degree burglary case by admitting evidence of defendant's subsequent offenses of shoplifting, breaking and entering and larceny, and car theft, and evidence that defendant used the proceeds from these offenses to purchase drugs, because: (1) the admission of subsequent bad acts was proper under N.C.G.S. § 8C-1, Rule 404(b) for a determination of whether defendant possessed the intent and motive for this first-degree burglary charge; (2) the fact that defendant sold a portion of stolen goods from the subsequent larcenies and used the funds to buy drugs shows defendant's intent and motive during the alleged burglary; (3) the time span of one to two months between the burglary and the subsequent larcenies does not render the larcenies too remote in time to show intent and motive; and (4) the probative value was not substantially outweighed by the danger of unfair prejudice to defendant in light of the trial court's limiting instruction, N.C.G.S. § 8C-1, Rule 403.

## 2. Burglary and Unlawful Breaking or Entering— alternative jury instruction—intent to obtain property by false pretenses

The trial court did not err in a first-degree burglary case by submitting the alternative jury instruction on defendant's intent to obtain property by false pretenses under N.C.G.S. § 14-100 when defendant made statements to the police that his purpose in entering the pertinent residence was to obtain money to buy drugs, because the State presented sufficient evidence to show that: (1) defendant falsely represented to the homeowners that he needed money because his car had broken down and he needed to get his mother to the hospital; (2) defendant intended to deceive the homeowners; (3) the homeowners were in fact deceived; and (4) defendant thereby attempted to obtain money from the homeowners.

**STATE v. HUTCHINSON**

[139 N.C. App. 132 (2000)]

**3. Criminal Law— instruction—flight—failure to show prejudice**

Although defendant contends the trial court erred in a first-degree burglary case by instructing the jury on defendant's flight when the evidence reveals that defendant walked away from the residence but did not attempt to hide or flee, defendant failed to meet his burden of showing how he was prejudiced by the admission of this evidence.

**4. Appeal and Error— preservation of issues—failure to cite authority**

Although defendant contends the trial court erred by allowing the State to show the effect of the first-degree burglary upon a young child residing in the house as an aggravating factor when the State did not list the child as an occupant of the house in the indictment, defendant has abandoned this argument since he failed to cite any authority in support of his argument as required by N.C. R. App. P. 28(b)(5).

Appeal by defendant from judgment entered 23 January 1998 by Judge Melzer A. Morgan, Jr. in Rockingham County Superior Court. Heard in the Court of Appeals 13 January 2000.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Roy A. Giles, Jr., for the State.*

*Maddrey Wilson & Etringer, by Walter J. Etringer, for defendant-appellant.*

McGEE, Judge.

Defendant Vergil Wayne Hutchinson was charged with first degree burglary in an indictment on 21 July 1997. The State's evidence presented at trial tended to show the following. During the early morning hours of 20 March 1997, defendant entered the house of Jeffrey and Wendy Watson at 303 Wentworth Street in Reidsville, North Carolina without their consent. Defendant entered the house through an unlocked screen door at the back of the residence, which led into a laundry room. One of the inner doors in the laundry room opened into the kitchen. After entering the laundry room, defendant started "beating and banging" at the doors. The residence was occupied by the Watsons, their two young sons, and Wendy Watson's grandmother.

Wendy Watson was alerted by her youngest son that someone was trying to get into the house. She awakened her husband and told him

someone was trying to get in the door. Wendy Watson dialed 911 and requested police assistance. Jeffrey Watson went into the kitchen located in the back of the house. When he turned on the kitchen light, he saw defendant standing at the locked inner door between the laundry room and the kitchen. Jeffrey Watson asked defendant, "What are you doing?" Defendant said that he meant no harm, that his car had broken down, and that he needed money to purchase gas to get his mother to Baptist Hospital. Jeffrey Watson told defendant that he did not know him and that he had no money to give him.

Wendy Watson came to the doorway of the kitchen and told her husband that the police were on the way. Jeffrey Watson testified that defendant then "took off." He stated that defendant turned around and walked out of the house. Officer Keith Petty and Sergeant Wendell Neville, Jr. of the Reidsville Police Department arrived at the Watson home in response to the 911 call. Officer Petty testified that he saw defendant coming around the corner of the house. He testified that when he approached defendant, defendant told him that he was trying to get his mother to Baptist Hospital and his car had broken down. Officer Petty said that he was concerned about the welfare of defendant's mother and inquired where defendant's car had broken down. Defendant responded that his car had not broken down and that he was walking.

Sergeant Neville advised defendant of his *Miranda* rights. Defendant made a statement to Sergeant Neville, who put defendant's statement in writing. Defendant objected to certain portions of the written statement and those were omitted from the final written statement. At trial, Sergeant Neville read defendant's written statement into evidence:

> Earlier I had been drinking and smoking crack at someone's house. I walked up to the back porch. I went in the door of the wash room and knocked on the inner door of the wash room. A lady came to the door and said, "Do you want me to get my gun?" I said, "No, I'm just trying to borrow a couple dollars. My mother and I are broke down on Wentworth Street.["] She hollered at her husband, and I told him I was broke down and needed a couple dollars. He said he didn't have any money. I left from the back porch and walked around the front as the police drove up. The only reason I went was to get money for crack. I didn't enter the house or go to the front door because there were no lights on. I knocked on. the back door and no one answered. I went to the back porch and knocked on the other door.

STATE v. HUTCHINSON

[139 N.C. App. 132 (2000)]

Sergeant Neville testified that he drove the length of Wentworth Street and was unable to locate any disabled car. Sergeant Neville further testified that defendant told him a second, different story. Defendant's second version was that he walked over to the residence at 303 Wentworth Street from a crack house and was looking for money to buy crack.

Prior to opening statements and in the absence of the jury, the trial court considered the State's motion to introduce statements defendant made to Detective Ken Hanks of the Reidsville Police Department, pursuant to Rule 404(b) of the North Carolina Rules of Evidence. These statements by defendant discussed three subsequent offenses defendant committed and the State argued they tended to show defendant's intent and motive at the time the alleged burglary was committed. On 20 May and 21 May 1997, defendant told Detective Hanks that he was involved in (1) shoplifting a vacuum cleaner from K-Mart on 25 April 1997, (2) breaking and entering and larceny at Reidsville Glass Company on 12 May 1997, and (3) a car theft on 21 May 1997. In addition, defendant told Detective Hanks that he had used some of the proceeds from the sale of stolen property to buy drugs. The trial court ruled that defendant's apparent drug habit and various larcenies were relevant to the issue of both intent and motive for the unlawful entry into the Watson residence. A jury found defendant guilty of first degree burglary on 23 January 1998, and he was sentenced to a term of imprisonment of 120 to 153 months. Defendant appeals.

I.

[1] Defendant contends that the trial court erred, pursuant to Rule 404(b), in admitting evidence of his offenses committed subsequent to the burglary. Furthermore, defendant argues that the trial court erred in admitting evidence that he had used some of the proceeds from these offenses to purchase drugs. We disagree.

Rule 404(b) of the North Carolina Rules of Evidence provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (1992). Nonetheless, the evidence offered can be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. N.C. Gen. Stat. § 8C-1, Rule 403 (1992). The question of what evidence should be excluded under Rule 403 is a matter left to the trial court's sound discretion. *State v. Coffey*, 326 N.C. 268, 281, 389 S.E.2d 48, 56 (1990).

Initially, we note that defendant's statements to Detective Hanks are admissible as an exception to the hearsay rule for admissions by a party opponent which includes "his own statement, in either his individual or a representative capacity[.]" N.C. Gen. Stat. § 8C-1, Rule 801(d)(A) (1992). More importantly, we believe the trial court properly admitted evidence of defendant's subsequent conduct in determining whether he possessed the intent and motive for the first degree burglary charge. First, our Supreme Court in 1944 expressly stated that evidence of other offenses applies to both subsequent and prior acts of the defendant. *State v. Biggs*, 224 N.C. 722, 726, 32 S.E.2d 354-55 (1944) ("This rule applies equally to evidence of like offenses committed *subsequent to the offense charged* . . . if not too remote in . . . time[.]") (emphasis added). Second, the plain language of Rule 404(b) makes no distinction between subsequent and prior acts of the defendant. N.C.G.S. § 8C-1, Rule 404(b) ("Evidence of *other crimes, wrongs, or acts* . . . may . . . be admissible for other purposes[.]") (emphasis added). Finally, our State's rule is consistent with holdings from other jurisdictions. *See, e.g., State v. May*, 669 P.2d 616, 621 (Ariz. App. 1983) ("[S]ubsequent bad acts may be admitted for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."); *Seagle v. State*, 448 So. 2d 481, 484 (Ala. Crim. App. 1984) (" 'If the accused is charged with a crime that requires a prerequisite intent, then *prior or subsequent* criminal acts are admissible to show that he had the necessary intent when he committed the now charged crime[.]' "); *People v. Bartall*, 456 N.E.2d 59, 68 (Ill. 1983) ("This court has also allowed subsequent-crimes evidence to be offered on the issue of 'intent,'[.]"); *Cantrell v. State*, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987) ("[E]vidence of subsequent crimes may be admitted for the purpose of showing intent.").

The State offered evidence of the subsequent offenses for the purpose of showing the intent and motive for defendant's alleged burglary of the Watson residence. Both intent and motive are proper purposes within the meaning of Rule 404(b). Defendant's admissions of (1) shoplifting of a vacuum cleaner from K-Mart, (2) breaking and

STATE v. HUTCHINSON

[139 N.C. App. 132 (2000)]

entering and larceny at Reidsville Glass Company, and (3) car theft are relevant to show his intent and motive for unlawfully entering the Watson residence. The fact that defendant sold a portion of stolen goods from the subsequent larcenies and used the funds to buy drugs tends to show defendant's intent and motive during the alleged burglary. In addition, we note that the time span of one to two months between the burglary and the subsequent larcenies does not render the larcenies too remote in time to show intent and motive. *See Biggs*, 224 N.C. at 726, 32 S.E.2d at 354-55 (where subsequent offenses took place almost one month later); *cf. State v. Stager*, 329 N.C. 278, 307, 406 S.E.2d 876, 893 (1991) ("[R]emoteness in time is less significant when the prior conduct is used to show intent, motive, knowledge, or lack of accident; remoteness in time generally affects only the weight to be given such evidence, not its admissibility.").

Defendant argues that the probative value of his admissions of subsequent offenses was substantially outweighed by the danger of unfair prejudice to him. N.C.G.S. § 8C-1, Rule 403. However, the record shows the trial court gave the following limiting instruction before Detective Hanks testified concerning defendant's admissions:

Ladies and gentlemen of the jury, evidence of acts after March 20, 1997, is about to be received. You may consider this evidence on the question of what the defendant's intent or motive was on March 20, 1997. If you believe such evidence, then you may consider such evidence of later acts as to whether on March 20, 1997, the defendant had the intent to commit larceny within the Watson residence and as to what the defendant's motives were on that date. If you believe this evidence, you may consider it, but only for the limited purposes for which it now being received.

Whether evidence should be excluded as unfairly prejudicial is a matter left to the sound discretion of the trial court and will not be disturbed unless it "is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. McDonald*, 130 N.C. App. 263, 267, 502 S.E.2d 409, 412-13 (1998) (citation omitted). Considering the trial court's limiting instruction, we hold that the trial court did not err in allowing evidence of defendant's admissions of subsequent offenses on the issue of his intent and motive for burglary of the Watson residence.

STATE v. HUTCHINSON

[139 N.C. App. 132 (2000)]

## II.

**[2]** Defendant next appears to argue that the trial court's alternative jury instruction on intent to obtain property by false pretenses was not supported by the trial court's prior rulings under Rule 404(b) and Rule 403 involving the admissibility of defendant's statements concerning three subsequent offenses.

Defendant's argument is misplaced. The basis for the alternative instruction in this case was not defendant's statements regarding the larcenies committed subsequent to the burglary at issue. Rather, the ground for the jury instruction was statements made by defendant to the police that his purpose in entering the Watson residence was to obtain money to buy drugs.

In *State v. Lampkins*, 283 N.C. 520, 523, 196 S.E.2d 697, 699 (1973), our Supreme Court stated "[a] trial judge should never give instructions to a jury which are not based upon a state of facts presented by some reasonable view of the evidence." Pursuant to N.C. Gen. Stat. § 14-100 (1993), the elements of obtaining property by false pretenses are:

(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another.

*State v. Cronin*, 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980). The State presented sufficient evidence to show that: (1) defendant falsely represented to Jeffrey Watson that he needed money because his car had broken down and he needed to get his mother to the hospital; (2) defendant intended to deceive Jeffrey Watson; (3) the Watsons were, in fact, deceived; and (4) defendant thereby attempted to obtain money from the Watsons. Therefore, we hold that the trial court properly instructed the jury based on sufficient evidence of the elements of the offense.

## III.

**[3]** Defendant next argues that the trial court erred in instructing he jury on "flight" of defendant. The trial court instructed the jury as follows:

The State contends here, and the defendant denies, that the defendant fled from the scene. Evidence of flight, members of the jury, may be considered by you together with all other facts and

circumstances in this case in determining whether the combined circumstances amount to an admission or show a consciousness of guilt. However, proof of this circumstance is not sufficient in itself to establish the defendant's guilt.

The trial court may not instruct a jury on a defendant's flight unless "there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged." *State v. Levan*, 326 N.C. 155, 164-65, 388 S.E.2d 429, 433-34 (1990) (citations omitted). "[M]ere evidence that defendant left the scene of the crime is not enough to support an instruction on flight. There must also be some evidence that defendant *took steps* to avoid apprehension." *State v. Westall*, 116 N.C. App. 534, 549, 449 S.E.2d 24, 33, *disc. review denied*, 338 N.C. 671, 453 S.E.2d 185 (1994) (emphasis added). Here, the evidence showed that after defendant entered the house, he made no attempt to leave. Defendant remained on the back porch after Jeffrey Watson confronted him. Even after Wendy Watson informed defendant that she had called the police, defendant walked away but did not attempt to hide or flee. In addition, when the police arrived, defendant did not attempt to avoid the police. *See id.* at 549-50, 449 S.E.2d at 33 (contrasting the time lapse between committing the crime and voluntarily surrendering to police).

However, "[t]he defendant is not entitled to a new trial based on trial errors unless such errors were material and prejudicial." *State v. Alston*, 307 N.C. 321, 339, 298 S.E.2d 631, 644 (1983). "Defendant has the burden of showing that he was prejudiced by the admission of the evidence." *State v. Wingard*, 317 N.C. 590, 599-600, 346 S.E.2d 638, 645 (1986). To meet this burden, defendant must show "that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443 (1988). In the present case, defendant argues only that the trial court erred in its jury instructions and never addresses the effect of the error on the jury's verdict. Therefore, we find defendant has failed to show he was prejudiced by the error.

IV.

[4] Finally, defendant argues that if the State intended to show the effect of the crime upon a young child residing in the house as an aggravating factor in the sentencing phase of the trial, the State should have listed the child as an occupant of the house in the indictment. Rule 28(b)(5) of the Rules of Appellate Procedure states that "[t]he body of the argument shall contain citations of the authorities

MULTIFAMILY MORTGAGE TR. v. CENTURY OAKS LTD.

[139 N.C. App. 140 (2000)]

upon which the appellant relies." Because defendant has failed to cite any authority in support of his argument, we deem this argument abandoned. N.C.R. App. P. 28(b)(5); *see Byrne v. Bordeaux*, 85 N.C. App. 262, 265, 354 S.E.2d 277, 279 (1987).

Defendant received a fair trial free of prejudicial error.

No error.

Judges JOHN and HUNTER concur.