IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-151

Filed 21 March 2023

New Hanover County, Nos. 20 CRS 58467, 21 CRS 721

STATE OF NORTH CAROLINA

v.

GARRY JUNIOR JONES, Defendant.

Appeal by defendant from judgment entered on or about 29 July 2021 by Judge Clint D. Rowe in Superior Court, New Hanover County. Heard in the Court of Appeals 4 October 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General Forrest P. Fallanca, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Jillian C. Franke, for defendant-appellant.*

STROUD, Chief Judge.

Defendant Garry Junior Jones appeals from a judgment, entered following a jury trial, for (1) possession of burglary tools and (2) misdemeanor attempted breaking or entering a building. Because a prior breaking and entering incident involving Defendant was substantially similar to the charged conduct, temporally proximate, and introduced for a non-propensity purpose, the trial court did not err in admitting evidence about the prior incident on Rule of Evidence 404(b) grounds. N.C. Gen. Stat. § 8C-1, Rule 404(b) (2019). Further, because the probative value of the

same evidence was not substantially outweighed by unfair prejudice, the trial court did not err in admitting it on Rule of Evidence 403 grounds. N.C. Gen. Stat. § 8C-1, Rule 403 (2019). Finally, as the surveillance video of the prior breaking and entering incident was properly authenticated, the trial court did not err in admitting the video. Thus, we conclude there was no error.

## I. Background

The State's evidence at trial showed, "a little bit after midnight" on 15 November 2020, Defendant entered the yard of a private home in Wilmington and "was trying to get into" the homeowner's storage shed. Specifically, Defendant "grabb[ed] the door" and "rattle[d] the knob" in a way the homeowner said the homeowner would do "to make sure it's locked[.]"

The homeowner's security camera captured Defendant approaching the shed and sent an alert to the homeowner. As the homeowner watched the security video, which was on "a few second delay," Defendant grabbed the door and then went around the side of the shed, which was off camera, towards another door into the shed. At the same time, the homeowner called 911. After calling 911, the homeowner did not see Defendant again. Defendant did not "make entry into any other part of [the] home" or "outside" the home, and the homeowner "kn[e]w of" nothing that was stolen.

When police officers arrived, the homeowner explained what happened, showed the officers the security footage, and gave them a description of the person he saw on the security video. After receiving the description, police officers "canvassed

the area for a suspect" and saw Defendant—who matched the homeowner's description and who the officers identified as the person in the security video—about 50 yards from the original home where Defendant was seen on the security video. When Defendant saw the police officers he "dipped into a neighborhood's [sic] yard" to try to "get out of sight from" them and then "conceal[ed] himself behind [a] vehicle[.]" As Defendant put his hands up in line with commands from the officers, he dropped "a pair of bolt cutters." The officers then arrested Defendant. After the arrest, the officers also found Defendant had a flashlight, a "box cutter that had a screwdriver head," and an "aluminum or steel pipe" with an attachment consistent with drug use.

On or about 8 March 2021, Defendant was indicted for (1) felony attempted breaking and entering ("attempted B&E") and (2) possession of implements of a housebreaking/ burglary tools ("possession of burglary tools"). On or about the same day, Defendant was also indicted for habitual felon status, to which he subsequently pled guilty.

The case came for trial starting on 26 July 2021. At trial, the homeowner and one of the police officers who responded to the homeowner's 911 call testified consistent with the above summary of facts. As part of the homeowner's testimony, the State admitted into evidence the homeowner's 911 call and the security video of the incident. As part of the police officer's testimony, the State admitted into evidence: body camera footage of Defendant's arrest; the bolt cutters and the pipe

Defendant had on him when arrested; and "still shots" from the security video that homeowner sent the officer. The State also had the officer show the jury the flashlight and box cutter found on Defendant as part of his testimony.

The State's final witness at trial was the investigating officer for a previous breaking and entering case where Defendant had pled guilty. The State sought to introduce the evidence of the prior breaking and entering pursuant to Rule of Evidence 404(b), consistent with its pretrial "Notice of State's Intent to Present 404(b) Evidence at Trial[.]" (Capitalization altered.) Outside the presence of the jury, the trial court held a hearing on the admissibility of the evidence of the prior breaking and entering incident.

During the hearing, the investigating officer testified, on *voir dire*, Defendant pled guilty to breaking and entering for a 2018 incident in which he broke into a residential shed shortly after midnight using a small knife. In the 2018 incident, a homeowner called police after his surveillance camera alerted him Defendant was breaking into the homeowner's shed. The investigating officer received surveillance video of the prior incident from the homeowner, which led to Defendant being charged. Defendant pled guilty to felony breaking and entering for the incident. The State admitted the transcript of Defendant's guilty plea and judgment into evidence for purposes of the hearing.

As part of the investigating officer's *voir dire* testimony, the State also sought to introduce the surveillance video of the prior breaking and entering incident. As

part of laying the foundation for admittance of the video, the investigating officer testified: the video was the same one she had seen the night of the incident; "to [her] knowledge" the video surveillance system was working correctly at the time of the incident; and the homeowner from the prior incident described what happened to the investigating officer in a way that matched the surveillance footage. As to the video specifically, Defendant's attorney objected on authentication grounds because the homeowner whose surveillance system captured the prior incident did not testify. The trial court admitted the video as part of the *voir dire* hearing over that objection.

Following the investigating officer's testimony and the introduction of the surveillance video of the prior breaking and entering incident, each side argued about whether the evidence about the past incident could be admitted on Rule 404(b) grounds. Defendant also argued the evidence of the prior incident was "highly prejudicial" and had "very limited probative nature[.]" The trial court ruled the evidence about the prior breaking and entering was admissible, but said neither the prosecutor nor the investigating officer could "characterize what's happening in" the surveillance video.

Following the admissibility hearing, the investigating officer testified about the prior breaking and entering consistent with her testimony during the hearing, over Defendant's renewed objection. As part of that testimony, the State admitted into evidence the arrest warrant, guilty plea transcript, and judgment for the prior incident. The trial court also received into evidence the surveillance video of the prior

incident, which the jury then watched.

Defendant did not present any evidence at trial. The jury then convicted Defendant of non-felonious attempted B&E and possession of burglary tools. On or about 29 July 2021, the trial court sentenced Defendant to a term of 35 to 54 months in prison, as enhanced by his habitual felon status. Defendant gave oral notice of appeal in open court.

## II.    Analysis

On appeal, Defendant challenges multiple aspects of the trial court's decision to allow the State to present evidence of his prior incident of breaking and entering conviction. First, Defendant argues "the trial court erred by admitting testimony and video surveillance evidence regarding" the prior incident under Rules of Evidence 404(b) and 403. (Capitalization altered.) Second, Defendant contends the trial court erred by admitting the video surveillance of the past incident because "the video was not properly authenticated" under Rule of Evidence 901. (Capitalization altered.) We review each contention in turn.

## A. Admission of Evidence of Prior Breaking and Entering Under Rules 404(b) and 403

We first examine Defendant's argument the trial court erred by admitting evidence of the prior breaking and entering incident under Rules 404(b) and 403. Rule 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity

therewith" but it "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C. Gen. Stat. § 8C-1, Rule 404(b). Rule 403 provides even relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403. When the admission of the same evidence is challenged based on both Rules 404(b) and 403, we review the evidence on 404(b) grounds first before turning to Rule 403. *See State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012) (explaining the court would review under Rule 404(b) first before then reviewing under Rule 403); *see also State v. Hembree*, 368 N.C. 2, 13, 770 S.E.2d 77, 85 (2015) (explaining Rule 403 "supplies an independent limitation on the ability of trial courts to admit evidence under" Rule 404(b)). As such, after discussing the standards of review, we will first examine the admissibility of the evidence under Rule 404(b) and then under Rule 403.

### 1. *Standards of Review*

Our Supreme Court has explained "when analyzing rulings applying Rules 404(b) and 403, we conduct distinct inquiries with different standards of review." *Beckelheimer*, 366 N.C. at 130, 726 S.E.2d at 159. "We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b)." *Id.*

"Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citation and quotation marks omitted).

"We then review the trial court's Rule 403 determination for abuse of discretion." *Beckelheimer*, 366 N.C. at 130, 726 S.E.2d at 159. "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Cagle*, 346 N.C. 497, 506-07, 488 S.E.2d 535, 542 (1997) (citation and quotation marks omitted).

## 2. *Rule 404(b)*

We first review *de novo* the trial court's ruling admitting the evidence of the prior breaking and entering under Rule 404(b). *See Beckelheimer*, 366 N.C. at 130, 726 S.E.2d at 159. Initially, we must address the State's argument "Defendant has failed to preserve for appellate review any argument concerning the admissibility" of the past incident evidence "under Rule 404(b), specifically, because he did not object on 404(b) grounds at trial and did not argue plain error on appeal."

Under our Rules of Appellate Procedure, "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). The objection must be made in the presence of the jury. *See State*

*v. Snead*, 368 N.C. 811, 816, 783 S.E.2d 733, 737 (2016) ("An objection made only during a hearing out of the jury's presence prior to the actual introduction of the testimony is insufficient." (citation and quotation marks omitted)). But if the party made a specific objection outside the presence of the jury, a general objection in the presence of the jury can be sufficient when it is clear from context the party was renewing the same objection made outside the presence of the jury. *See State v. Rayfield*, 231 N.C. App. 632, 637-38, 752 S.E.2d 745, 751 (2014) (holding an issue was preserved for appellate review when the defendant made an objection at trial that did not state the grounds for the objection because it was "clear from the context" the defendant was renewing an earlier objection made in a pretrial motion to suppress).

Here, as the State argues, Defendant's attorney only stated, "Objection" without any reasoning when the State sought to introduce video surveillance of the prior breaking and entering incident during testimony by the investigating officer from the prior incident. But it is "clear from the context" this objection related back to the objections Defendant's attorney made during the extensive *voir dire* of the same witness. *Rayfield*, 231 N.C. App. at 637-38, 752 S.E.2d at 751. During that *voir dire*, Defendant's attorney specifically argued the evidence of the prior incident could not be admitted under Rule 404(b) because the prior breaking and entering did not involve "an unusual set of facts" and was also "very different" from the charged conduct. Since the objection before the jury clearly related back to the 404(b) objection during *voir dire*, Defendant properly preserved the 404(b) argument. *See*

*id.*

Turning to the merits, "[g]enerally, Rule 404 acts as a gatekeeper against 'character evidence': evidence of a defendant's character—as illustrated through either direct testimony or evidence of prior bad acts—admitted for the purpose of proving that he acted in conformity therewith on a particular occasion." *State v. Pabon*, 380 N.C. 241, 258, 867 S.E.2d 632, 643-644 (2022) (citation and quotation marks omitted). Notwithstanding that "important protective role[,]" our Supreme Court has "repeatedly held that 'Rule 404(b) state[s] a clear general rule of *inclusion*.'" *Id.* at 258, 867 S.E.2d at 644 (brackets and emphasis in original) (quoting *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990)). Specifically, "relevant evidence of past crimes, wrongs, or acts by a defendant are generally admissible for any one or more of the purposes enumerated in Rule 404(b)'s non-exhaustive list, 'subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.'" *Id.* (emphasis in original) (quoting *Coffey*, 326 N.C. at 279, 389 S.E.2d at 54).

Rule 404(b)'s inclusive nature "is still 'constrained by the requirements of similarity and temporal proximity.'" *Beckelheimer*, 366 N.C. at 131, 726 S.E.2d at 159 (quoting *State v. Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002)). For the similarity requirement, "prior acts are considered sufficiently similar under Rule 404(b) 'if there are some unusual facts present in both crimes that would

indicate that the same person committed them.'" *Pabon*, 380 N.C. at 259, 867 S.E.2d at 644 (quoting *Beckelheimer*, 366 N.C. at 131, 726 S.E.2d at 159). The similarities need only "be specific enough to distinguish the acts from any generalized commission of the crime[;]" they do not need to "'rise to the level of the unique and bizarre.'" *Id.* (quoting *Beckelheimer*, 366 N.C. at 131, 726 S.E.2d at 159). The other constraint, temporal proximity, is considered on a case-by-case basis. *See id.* at 259, 867 S.E.2d at 645 ("[R]emoteness for purposes of 404(b) must be considered in light of the specific facts of each case[.]" (quoting *Beckelheimer*, 366 N.C. at 132, 726 S.E.2d at 160)).

Thus, Rule 404(b) has three requirements for the admission of evidence. First, relevant evidence of the past acts by a defendant must have probative value beyond showing "the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *Id.* at 258, 867 S.E.2d at 644. Second, the past act must be similar enough to the charged crime to "distinguish the acts from any generalized commission of the crime[.]" *Id.* at 259, 867 S.E.2d at 644. Third, the past act must be temporally proximate to the presently charged act. *See id.*

Of those three requirements, Defendant only contests whether the past breaking and entering incident was similar enough to the charged incident. Defendant specifically argues "[t]he similarities between the incidents begin and end with generic features of breaking and entering—trying to open or opening and entering a shed at night." Further, Defendant highlights certain differences between the past and present incidents.

Contrary to Defendant's arguments, the past breaking and entering incident is similar enough to the charged incident to be admissible under Rule 404(b). The bar for similarity in cases where houses are broken into, such as a breaking and entering case, *see* N.C. Gen. Stat. Chapter 14, Subchapter IV, Article 14 (grouping the offenses with which Defendant was charged in an Article entitled "Burglary and Other Housebreakings"), is relatively low. In *State v. Martin*, while doing a 404(b) analysis in a burglary case, this Court summarized a past decision on similarity in relation to breaking and entering as follows: "This Court has found prior acts of '(1) shoplifting of a vacuum cleaner from K–Mart, (2) breaking and entering and larceny at a place of business, and (3) car theft . . . relevant to show defendant's intent and motive for unlawfully entering the victim's residence.'" *State v. Martin*, 191 N.C. App. 462, 467-68, 665 S.E.2d 471, 474-75 (2008) (ellipses in original) (brackets omitted) (quoting *State v. Hutchinson*, 139 N.C. App. 132, 136-37, 532 S.E.2d 569, 572 (2000)). In *Martin* itself, this Court found a prior incident with both breaking and entering and larceny was relevant to the burglary charge at issue in the case because both involved breaking into a car at a residential location. *See id.*

Here, the incidents are even more similar than the incidents discussed in *Martin. See id.* In the previous situation, Defendant pled guilty to felony breaking and entering for an incident where he broke into a residential shed shortly after midnight using a small knife. In the instant case, Defendant approached a shed shortly after midnight with, among other items, a box cutter. In *Martin,* the

similarities in residential setting and type of item broken into were sufficient for the 404(b) similarity requirement. *See id.* Here, those similarities are present because in both instances Defendant broke into or attempted to break into a residential shed. Additionally, here both the prior and current incidents took place shortly after midnight. And Defendant had a similar instrument with him each time, a knife in the prior incident and a box cutter in the instant case. Thus, the State presented adequate evidence of the similarity of the prior offense and the current conduct.

Defendant's arguments do not convince us otherwise. Defendant first argues "[t]he similarities between the incidents begin and end with generic features of breaking and entering—trying to open or opening and entering a shed at night." Defendant is wrong to describe "trying to open or opening and entering a shed at night" as the "generic features of breaking and entering[.]" "The essential elements of felonious breaking or entering are (1) the breaking or entering (2) *of any building* (3) with the intent to commit any felony or larceny therein." *State v. Cox*, 375 N.C. 165, 172, 846 S.E.2d 482, 488 (2020) (emphasis added) (citation and quotation marks omitted); *see also* N.C. Gen. Stat. § 14-54(a) (2019) ("Any person who breaks or enters any building with intent to commit any felony or larceny therein shall be punished as a Class H felon."). Under the statute, a building is "any dwelling, dwelling house, uninhabited house, building under construction, building within the curtilage of a dwelling house, and any other structure designed to house or secure within it any activity or property." N.C. Gen. Stat. § 14-54(c). Our past cases on breaking and

entering have shown a wide variety of buildings that can fit within the element of "any building." *Id.*; *see, e.g., State v. Avery*, 315 N.C. 1, 24, 337 S.E.2d 786, 799 (1985) (business complex); *State v. Bost*, 55 N.C. App. 612, 613, 615, 286 S.E.2d 632, 633-34 (1982) (trailer on construction site); *State v. Winston*, 45 N.C. App. 99, 101, 262 S.E.2d 331, 333 (1980) (office of county clerk of court). As a result, the fact that both instances involved trying to or actually entering a shed alone takes them beyond the generic features of breaking and entering. The commonalities in timing and instruments carried, as discussed above, further demonstrate the similarities between the prior incident and the instant case are not merely superficial. As a result, we reject Defendant's argument the incidents both involve only the "generic features of breaking and entering[.]"

Defendant's focus on the differences between the two incidents is also misplaced. When reviewing the similarity requirement in a Rule 404(b) analysis, "we must not 'focus on the differences between the prior and current incidents,' but rather 'review the similarities noted by the trial court.'" *State v. Wilson-Angeles*, 251 N.C. App. 886, 893, 795 S.E.2d 657, 664 (2017) (brackets omitted) (quoting *Beckelheimer*, 366 N.C. at 131-32, 726 S.E.2d at 159). As already explained, there are sufficient similarities between the past breaking and entering incident and the current one to meet the first 404(b) requirement.

The other two requirements, probative value for some non-propensity reason and temporal proximity, are also met here. *See Pabon*, 380 N.C. at 259, 867 S.E.2d

at 644. Focusing on non-propensity probative value first, as the prosecutor argued at trial and the State argues on appeal, the prior breaking and entering incident had probative value as to Defendant's intent. The State had to prove Defendant had the intent to commit a breaking for the charges of attempted B&E and possession of burglary tools under both N.C. Gen. Stat. § 14-54 and § 14-55. *See* N.C. Gen. Stat. §§ 14-54, 14-55; *Cox*, 375 N.C. at 172, 846 S.E.2d at 488 ("The essential elements of felonious breaking or entering are (1) the breaking or entering (2) *of any building* (3) with the intent to commit any felony or larceny therein." (emphasis added)); *State v. Bagley*, 300 N.C. 736, 740-41, 268 S.E.2d 77, 79-80 (1980) (holding, under N.C. Gen. Stat. § 14-55, "the burden rests on the State to show beyond a reasonable doubt that the defendant possessed the article in question with a general intent to use it at some time for the purpose of facilitating a breaking"); *see also State v. Smith*, 300 N.C. 71, 79, 265 S.E.2d 164, 169-70 (1980) (explaining one of the elements of "an attempt to commit a crime" is "the intent to commit the substantive offense"). Defendant pleading guilty to felony breaking and entering for a similar previous incident is probative of intent here because it shows in the past in similar circumstances Defendant had the requisite intent. If Defendant in similar circumstances in the past had the intent to commit a breaking, the jury could reason he had the same intent in the instant case.

The prior breaking and entering was also temporally proximate to the conduct in the instant case. First, we note "'remoteness in time is less significant when,' as is

the case here, 'the prior conduct is used to show intent[.]'" *Martin*, 191 N.C. App. at

467, 665 S.E.2d at 474-75 (brackets from original omitted) (quoting *State v. Stager*,

329 N.C. 278, 307, 406 S.E.2d 876, 893 (1991)). Second, the gap in time between the

offenses is not particularly long in light of our precedent. The prior breaking and

entering occurred on 31 January 2018. The instant offense occurred on 15 November

2020. Thus, the gap in time is a little over two and a half years. In another case

regarding house break-ins, with a 404(b) analysis, this Court "d[id] not find the time

span of two years to be too remote in time to show motive and intent." *See id.* at 468,

665 S.E.2d at 475. We similarly do not find a time span just a few months longer to

be too remote in time to show intent in this case. *See id.*

Thus, all three requirements for evidence to be admissible under Rule 404(b)

are met here. Therefore, after our *de novo* review, we conclude the trial court did not

err on Rule 404(b) grounds in admitting the evidence about the past breaking and

entering incident.

### 3. *Rule 403*

Defendant also argues the evidence about the past breaking and entering

incident "was inadmissible under Rule 403." Specifically, Defendant contends

"utilizing multiple types of evidence—testimony, court records and videos—was

needlessly cumulative and unnecessary" and "[t]he cumulative effect of this evidence

was that the probative value was substantially outweighed by the danger of unfair

prejudice to" Defendant. We review the trial court's decision to admit the evidence of

- 16 -

the prior breaking and entering over Defendant's Rule 403 objection for abuse of discretion. *See Beckelheimer*, 366 N.C. at 130, 726 S.E.2d at 159.

Under Rule 403, evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403. "'Unfair prejudice,' as used in Rule 403 means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." *Cagle*, 346 N.C. at 506, 488 S.E.2d at 542 (citation and quotation marks omitted).

In the context of evidence of prior acts admissible under Rule 404(b), the Rule 403 inquiry has two components. First, reviewing courts again consider the similarities between the prior conduct and charged conduct. *See Beckelheimer*, 366 N.C. at 133, 726 S.E.2d at 161 (finding no abuse of discretion based in part on "the similarities between the accounts of the victim and the 404(b) witness"); *State v. Mangum*, 242 N.C. App. 202, 213-14, 773 S.E.2d 555, 564 (2015) (finding no abuse of discretion based in part on "the significant points of commonality between the Rule 404(b) evidence and the offense charged"). This consideration addresses the probative side of Rule 403's weighing of whether evidence's "probative value is substantially outweighed by the danger of unfair prejudice[.]" N.C. Gen. Stat. § 8C-1, Rule 403; *see Pabon*, 380 N.C. at 258-59, 867 S.E.2d at 643-45 (explaining the role of similarity in a Rule 404(b) analysis after saying Rule 404(b) evidence "is objectionable not because

it has no appreciable probative value but because it has too much" such that similarity relates to probativeness (citation and quotation marks omitted)).

Second, reviewing courts consider whether the trial court "careful[ly] handl[ed] the process[.]" *Beckelheimer*, 366 N.C. at 133, 726 S.E.2d at 161 (finding no abuse of discretion in part because of "the trial judge's careful handling of the process"); *see also Mangum*, 242 N.C. App. at 213-14, 773 S.E.2d at 564 (finding no abuse of discretion based in part on "the trial court's conscientious handling of the process"). When examining this issue, reviewing courts consider whether the trial court "first heard the testimony of the 404(b) witness outside the presence of the jury" to help rule on its admissibility; excluded testimony about any incidents without sufficient similarity; and gave limiting instructions to the jury. *Beckelheimer*, 366 N.C. at 133, 726 S.E.2d at 160-61 (discussing those facts before determining the trial judge had carefully handled the process); *Mangum*, 242 N.C. App. at 213-14, 773 S.E.2d at 564 (mentioning the trial court's review of the evidence outside the jury's presence and use of limiting instructions). The trial court's careful handling of the process relates to the other part of the Rule 403 weighing equation, "the potential danger of unfair prejudice[.]" *Beckelheimer*, 366 N.C. at 133, 726 S.E.2d at 160-61 (starting its discussion of whether the trial court carefully handled the process by stating, "a review of the record reveals that the trial court was aware of the potential danger of unfair prejudice to defendant" (quoting *State v. Hipps*, 348 N.C. 377, 406, 501 S.E.2d 625, 642 (1998))).

Here, reviewing both factors, the trial court did not abuse its discretion when it determined the danger of unfair prejudice did not substantially outweigh the probative value of the prior breaking and entering incident. As we have explained above in the main Rule 404(b) analysis, the prior incident and the charged conduct shared substantial similarities. Further, the trial court carefully handled the process. The trial court conducted a *voir dire* of the investigating officer from the prior incident outside the jury's presence to rule on whether the evidence about the past incident would be admissible. The trial court also gave a limiting instruction that explicitly told the jury the purposes for which they could consider the prior breaking and entering incident and warned them they could "not consider it for any other purpose."

Defendant's other argument that "utilizing multiple types of evidence— testimony, court records and videos—was needlessly cumulative and unnecessary" was not preserved. Longstanding precedent dictates when a defendant fails to make an argument before the trial court, he cannot "swap horses between courts in order to get a better mount[.]" *See, e.g., State v. Hamilton*, 351 N.C. 14, 22, 519 S.E.2d 514, 519 (1999) (quoting, *inter alia*, *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)). Before the trial court, Defendant's attorney only argued the evidence of the prior breaking and entering was "highly prejudicial" and had "very limited probative nature." Defendant made no argument below that the multiple types of evidence were unnecessarily cumulative. Therefore, we do not address this unpreserved

argument.

Given the similarities between the prior incident and charged conduct as well as the trial court's "careful handling of the process," *Beckelheimer*, 366 N.C. at 133, 726 S.E.2d at 161, the trial court did not abuse its discretion in ruling under Rule 403 that the probative nature of the evidence was not substantially outweighed by any unfair prejudice. Because we have already concluded the trial court did not err under Rule 404(b), we now hold the trial court did not commit error in allowing the State to present evidence of the prior breaking and entering incident.

## B. Authentication of Video Surveillance of Prior Breaking and Entering

Beyond his arguments on Rule 404(b) and 403 grounds, Defendant contends "the trial court erred by allowing video surveillance of" the prior breaking and entering because "the video was not properly authenticated." (Capitalization altered.) Specifically, Defendant asserts the State failed to present testimony the security cameras used "were generally reliable" and did not address the "type of recording equipment that was used."

### 1. *Standard of Review*

We review *de novo* rulings on authentication issues under Rule of Evidence 901. *See State v. Crawley*, 217 N.C. App. 509, 515-16, 719 S.E.2d 632, 637 (2011) (explaining a trial court ruling on authentication "is reviewed *de novo* on appeal as a question of law" in a case about the admission of cell phone records under Rule 901).

### 2. *Merits*

Turning to the merits for our *de novo* review, N.C. Gen. Stat. § 8-97 allows a party to introduce, *inter alia,* videotapes "as substantive evidence upon laying a proper foundation and meeting other applicable evidentiary requirements." N.C. Gen. Stat. § 8-97 (2019). For authentication purposes, the main evidentiary requirement comes from Rule of Evidence 901. Rule 901(a) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." N.C. Gen. Stat. § 8C-1, Rule 901(a) (2019). Rule 901(b) then provides a non-exhaustive list of "examples of authentication or identification conforming with the requirements of this rule[.]" N.C. Gen. Stat. § 8C-1, Rule 901(b).

In *State v. Snead*, our Supreme Court recognized the example listed in Rule 901(b)(9) applies to surveillance videotapes like the ones at issue here: "Recordings such as a tape from an automatic surveillance camera can be authenticated as the accurate product of an automated process under Rule 901(b)(9)." *Snead*, 368 N.C. at 814, 783 S.E.2d at 736 (citation and quotation marks omitted). As a result, "[e]vidence that the recording process is reliable and that the video introduced at trial is the same video that was produced by the recording process is sufficient to authenticate the video and lay a proper foundation for its admission as substantive evidence." *Id.* Additionally, video surveillance can be authenticated by a witness

testifying the video "accurately depicted events that he had observed[.]" *See State v. Moore*, 254 N.C. App. 544, 565, 803 S.E.2d 196, 210 (2017) (holding the video was not properly authenticated in part because no testimony was presented about "whether the video accurately depicted events that [a witness] had observed").

Two examples are illustrative. In *State v. Fleming*, the investigating officer testified "the surveillance video system was functioning properly at the time the video was captured and the video images introduced at trial were unedited and were the same video images created by this system." *State v. Fleming*, 247 N.C. App. 812, 817-18, 786 S.E.2d 760, 765-66 (2016). As a result, this Court held the "surveillance video was adequately authenticated." *Id.* at 818, 786 S.E.2d at 766. By contrast, in *Moore*, this Court held the State "failed to offer a proper foundation" to admit video surveillance testimony because "no testimony was elicited at trial concerning the type of recording equipment used to make the video, its condition" on the date of the offense, "or its general reliability." *Moore*, 254 N.C. App. at 565, 803 S.E.2d at 210. Further, no witness testified "the video accurately depicted events that he had observed." *Id.*

Here, the State sufficiently authenticated the surveillance video of the prior breaking and entering incident. The investigating officer testified multiple times the surveillance video introduced at trial was the same video that she had seen the night of the prior breaking and entering, thereby fulfilling one requirement. *See Snead*, 368 N.C. at 814, 783 S.E.2d at 736 (requiring "the video introduced at trial" to be "the

same video that was produced by the recording process").

The State also presented sufficient evidence that the recording process was reliable. Similar to *Fleming*, *see* 247 N.C. App. at 817-18, 786 S.E.2d at 765-66, the investigating officer testified "to [her] knowledge" the video surveillance system was working correctly that night. In addition, the investigating officer testified the footage the homeowner sent matched what the homeowner described had happened. This testimony resembles the scenario discussed in *Moore* where video surveillance can be authenticated by a witness testifying the video "accurately depicted events that he had observed[.]" *Moore*, 254 N.C. App. at 565, 803 S.E.2d at 210. While the homeowner did not testify to this directly, the fact that his description matched the footage provides further support for the reliability of the surveillance footage by showing it recorded accurately as checked by someone who had observed the events. Thus, the State sufficiently authenticated the surveillance video of the prior breaking and entering incident.

Even if the State had not sufficiently authenticated the surveillance video, we would still reject Defendant's argument because Defendant failed to show prejudice from this purported error. For errors in rulings on authentication grounds, a defendant must show prejudice. *See Moore*, 254 N.C. App. at 565-66, 803 S.E.2d at 210 (addressing prejudice immediately after ruling the trial court erred in admitting video surveillance on authentication grounds). According to our statutes:

> A defendant is prejudiced by errors relating to rights

> arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant. Prejudice also exists in any instance in which it is deemed to exist as a matter of law or error is deemed reversible per se.

N.C. Gen. Stat. § 15A-1443(a) (2019).

Defendant cannot carry that burden here. As already discussed, the video surveillance of the prior breaking and entering was introduced to prove Defendant had the requisite intent. Taking away the surveillance video, the jury had before it significant other evidence of Defendant's intent because evidence about the same incident came in through multiple other avenues. *See Moore*, 254 N.C. App. at 566-67, 803 S.E.2d at 210-11 (summarizing other evidence presented on the same issue as a piece of evidence admitted in error to determine whether there was prejudice from the error in admitting the one piece of evidence). First, the State admitted into evidence the plea agreement and judgment from the prior incident. Further, the investigating officer testified about the prior breaking and entering depicted in the surveillance footage. As part of that testimony, the investigating officer specifically said the homeowner had surveillance footage that depicted "a male suspect" inside the shed, and, based in part on those clips, she charged Defendant with felony breaking and entering for the prior incident. This testimony clearly suggests the surveillance footage depicted Defendant breaking and entering into the shed in this

prior instance, which as discussed above helps show his intent to commit a breaking in the current case.

In another part of his brief, Defendant even implicitly recognized the large amount of evidence presented on the prior breaking and entering incident. Specifically, Defendant argued, as part of his Rule 403 argument, "utilizing multiple types of evidence—testimony, court records and videos—was needlessly cumulative and unnecessary." If the surveillance videos helped make the evidence about the prior break-ins "needlessly cumulative and unnecessary[,]" then, taking away the videos, the other evidence was still sufficient on its own to show intent. As a result, Defendant cannot show a reasonable possibility a different verdict would have happened at trial even if that admission were error and therefore cannot demonstrate prejudice. *See* N.C. Gen. Stat. § 15A-1443(a).

### III. Conclusion

After reviewing all the issues on appeal, the trial court did not commit an error. The past breaking and entering incident was sufficiently similar and temporally proximate to the charged conduct, and the State introduced it for a permissible purpose. As a result the trial court did not err in admitting the evidence of the past incident on Rule 404(b) grounds. The trial court also did not err in admitting the evidence about the prior incident on Rule 403 grounds because its probative value was not substantially outweighed by the risk of unfair prejudice. Finally, the State properly authenticated surveillance footage of the prior breaking and entering

incident, and, even if it had been error to admit the footage, Defendant could not demonstrate prejudice.  Therefore, we conclude there was no error.

NO ERROR.

Judges MURPHY and GORE concur.